## IN THE MATTER OF H. HOOVER GARABEDIAN.

Suffolk. February 1, 1993. - April 23, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension, Commingling of funds, Deceit, Negligence.

A three-month suspension from the practice of law was the appropriate discipline to be imposed on an attorney who neglected legal matters entrusted to him on three separate occasions; commingled clients' funds with his own and on one such occasion briefly misappropriated a client's money to his own use; and engaged in two instances of conduct involving dishonesty, fraud, deceit, or misrepresentation; in addition, the attorney's client accounts were to be audited at his expense twice yearly for three years by an accountant to be chosen by bar counsel. [84-85]

In an attorney disciplinary proceeding, this court adopted the recommendation of the hearing committee of the Board of Bar Overseers that the attorney be ordered to return a sum of $5,000 to his client which had been paid by the office of a district attorney to the attorney in connection with his representation of the client regarding a criminal charge of possession of a controlled substance with intent to distribute and in a related civil forfeiture case. [85-86]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on February 26, 1992.

The case was reported by *Wilkins*, J.

*Cathleen Cavell*, Assistant Bar Counsel.

*Michael P. Angelini* for the respondent.

O'CONNOR, J. We must decide the appropriate level of discipline to be imposed on the respondent, Attorney H. Hoover Garabedian, for three instances of neglect of legal matters entrusted to him, in violation of S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981); for one instance of failure to preserve the identity of client funds, in violation of S.J.C. Rule 3:07, Canon 9, DR 9-102

(A), as appearing in 382 Mass. 795 (1981); and for two instances of conduct involving dishonesty, fraud, deceit, or misrepresentation, and adversely reflecting on Mr. Garabedian's fitness to practice law, in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981). We also must decide the appropriate disposition of $5,000 paid by the office of the district attorney for Worcester County to Mr. Garabedian in connection with his representation of a client regarding a criminal charge of possession of a controlled substance with intent to distribute and in a related civil forfeiture case. As we discuss in detail below, the client pleaded guilty in the criminal case, and the civil case was settled.

A hearing committee of the Board of Bar Overseers (board) recommended that Mr. Garabedian be suspended from the practice of law for three months and that he be ordered to return $5,000 to the client in count six. Mr. Garabedian appealed to an appeal panel. Two of three panel members concurred with the recommendation of a three-month period of suspension. One member voted for public censure. The appeal panel also recommended, differently from the hearing committee, that Mr. Garabedian be ordered to deposit $5,000 in the Superior Court to be disposed of pursuant to an order of that court, and that an order issue requiring that Mr. Garabedian's client accounts be audited at his expense twice yearly for three years by an accountant to be chosen by bar counsel.

The board adopted the appeal panel's report and recommendation by a seven-to-four vote, and filed an information with this court. Three dissenting members voted for a lesser sanction and one member voted for a greater sanction. A single justice of this court reserved and reported the matter to the full court. We order that Mr. Garabedian be suspended from the practice of law for three months, that he pay $5,000 to the client in count six, and that Mr. Garabedian's client accounts be audited at his expense in accordance with the recommendation of the appeal panel of the board.

The respondent was admitted to the Bar of the Commonwealth on October 17, 1955. He received one prior discipline in 1983, an informal admonition, for neglect and prejudice to a client. The relevant facts of misconduct with which Mr. Garabedian is now charged, which we take from the hearing committee's findings, accepted by the appeal panel, are as follows. In the first matter, Mr. Garabedian neglected a client's personal injury claim arising from injuries suffered in 1978. The only action Mr. Garabedian took in that matter was to file a complaint one day after the three-year statute of limitations had expired. Further, with respect to a workers' compensation claim of the same client arising from injuries in 1977, Mr. Garabedian took no action except for one trip to the Industrial Accident Board to look for a record of her claim. The appeal panel agreed with the hearing committee's conclusion that Mr. Garabedian had neglected his client's legal matters in violation of DR 6-101 (A) (3). As a mitigating factor, however, bearing on the question of ultimate harm to the client, the hearing committee found, and the appeal panel accepted the finding, that the client brought a malpractice action against Mr. Garabedian for his failure to file the personal injury action on time, and that case was settled for $4,040.

Another incident also involved the neglect of a civil matter. In August, 1988, in connection with an interpleader action in the United States District Court in which Mr. Garabedian represented Pasquale Cardenuto as a defendant, a magistrate ordered that discovery responses would be filed between the parties by September 30, 1988. No answers to the plaintiff's interrogatories or motions were filed on behalf of Cardenuto by that date. The court ordered that answers be filed by November 4, but none were filed and no extensions of time were requested. At a subsequent court conference, at which new counsel for Cardenuto appeared, the magistrate denied the plaintiff's request that Cardenuto's counterclaim be dismissed. The magistrate characterized the request as based on "dereliction by his attorney." Cardenuto was not harmed. In mitigation, the hearing committee found,

and the appeals panel adopted the finding, that between September and November, 1988, there were communications between Mr. Garabedian and "Boston counsel" in which Boston counsel indicated they were looking for successor counsel to represent Cardenuto.

Mr. Garabedian also represented Cardenuto as a defendant in a criminal trial involving charges of arson and burning insured property with intent to defraud an insurer. The trial judge denied Mr. Garabedian's motions for required findings of not guilty, and Cardenuto was convicted of both charges. On the evening the verdicts were returned, Cardenuto's brother-in-law told Mr. Garabedian that he, the brother-in-law, had been responsible for the fire. As a result, Mr. Garabedian moved for a new trial. The motion for a new trial was denied, and that ruling was affirmed on appeal. *Commonwealth* v. *Cardenuto*, 24 Mass. App. Ct. 1113 (1987). Mr. Garabedian did not appeal from the denial of his motions for required findings of not guilty. However, after the Appeals Court affirmed the denial of the motion for a new trial, and further appellate review was denied, Cardenuto obtained new counsel, who filed a second motion for postconviction relief asserting that Mr. Garabedian had provided Cardenuto with ineffective assistance of counsel in failing to appeal the denial of his motions for required findings. The motion judge awarded Cardenuto a new trial. On the Commonwealth's appeal, we held that Mr. Garabedian's "failure to appeal the denial of the motions for required findings of not guilty amounted to ineffective assistance of counsel." *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 453 (1990). The hearing committee and the appeal panel concluded that Mr. Garabedian's failure to appeal constituted neglect in violation of DR 6-101 (A) (3).

In 1987, Mr. Garabedian was retained to represent an individual in connection with the probate of her husband's estate, and he received $6,000 as a retainer. He deposited the $6,000 in his personal checking account, and the next day issued a check from that account to the Internal Revenue Service discharging his 1986 tax liability. This caused his

checking account balance to fall substantially below $6,000, where it remained for four days. Two years later, after his client had discharged him, Mr. Garabedian returned the full amount of the retainer to her despite his claim that he had earned at least one-half that amount.

Mr. Garabedian opened a client funds account in 1990. Before that, he consistently commingled client and personal funds. However, no client was harmed by the commingling.

The hearing committee concluded, and the appeal panel agreed, that Mr. Garabedian failed to preserve the identity of client funds, violating DR 9-102 (A), and participated in conduct involving dishonesty and adversely reflecting on his fitness to practice by using his client's funds to pay his taxes, in violation of DR 1-102 (A) (4) and (6).

Finally, Mr. Garabedian represented the client in count six in a criminal trial for possession of a controlled substance with intent to distribute and in a related civil forfeiture claim for $14,524, which sum had been seized by Worcester police officers from the client's home. After the client's arrest, Mr. Garabedian told the client and his father that he would require a $5,000 "one time" fee to represent the client. The fee was paid. Just prior to trial of the criminal case, Mr. Garabedian, the prosecutor, and the trial judge engaged in a lobby conference concerning the possibility of a plea. Both counsel told the judge that the client was unwilling to plead guilty partly because the client thought it unfair that he should forfeit all the seized money. According to the hearing committee's report, "[t]he judge . . . suggested that he [the judge] would agree to return some of the seized money if [Mr. Garabedian] promised to charge [the client] that amount as a fee. . . . [Mr. Garabedian] apparently did not at that time disclose that he had already received a $5,000 fee. . . . At the completion of the lobby conference it was [the judge's] understanding that [the client] would not ultimately personally receive the portion of the seized money being returned, that is, the $5,000. . . . After discussion with [Mr. Garabedian], [the client] agreed to the bargain."

Following the recitation of facts set forth above, the hearing committee report contains a statement of evidence as follows: "According to [the client], [Mr. Garabedian] told [the client] with his parents present that if he pled guilty, he would receive a ten year suspended sentence with two years probation and all his cash would be forfeited. . . . According to [Mr. Garabedian], he conferred with his client alone. He testified he relayed the terms of the proposed plea, including the proposal that $5,000 go to [Mr. Garabedian] and that it was made clear that [the client] personally would receive no money." With respect to this recitation of evidence, the appeal panel said, rightly we think, that "[t]he Hearing Committee made no specific finding as to this conflicting testimony. We must infer, however, from the Conclusion of Law reported by the Hearing Committee, that it credited the client's testimony."

We shall set forth the hearing committee's conclusion of law, to which the appeal panel referred, in one moment. First, however, we return to the hearing committee's findings which, in further material part, were as follows. Following Mr. Garabedian's conference with his client, the judge conducted a plea hearing in the courtroom. The judge described counsel's joint recommendation regarding forfeiture as follows: "[Y]ou forfeit [$9,524] of the amount of money that was seized from you, which totals [$14,524], and . . . all of the other property be returned to you that the police seized." Later in the hearing, the judge stated that he would order "that the amount of property be forfeited and the balance be returned." After the hearing, the client questioned Mr. Garabedian about the $5,000. Mr. Garabedian told the client that the judge was mistaken. However, Mr. Garabedian did not make it clear to the client that the judge had obliged Mr. Garabedian to retain, or obtain from the client, the $5,000 as a fee. Later, the district attorney's office gave Mr. Garabedian a check for $5,000 payable to "H. Hoover Garabedian, Attorney for [the client]" and Mr. Garabedian deposited the check in his own personal account.

The hearing committee made the following observations in its report. "[The client] frames his complaint against the Respondent by stating that he is not claiming that the Respondent didn't do any work or that he didn't get a good deal in the end but that the Respondent 'took some money that didn't belong to him.' . . . Because of the Court's description of the proposed plea bargain at the plea and disposition hearing, it is understandable that [the client] would believe he was entitled to the receipt of $5,000. [The judge] stated as follows in addressing [the client]: '[Y]ou understand . . . that you forfeit $9,524 of the amount of money that was seized from you, which totals $14,524, and that all of the other property be returned to you that the police seized?' In fact, it was the express understanding of the judge, the prosecutor and [Mr. Garabedian] that the return of money to [the client] was a sham and that [Mr. Garabedian] was charged as an officer of the court with ensuring that his client did not ultimately get that money. Nowhere in the plea and disposition hearing is the real intent of the bargain disclosed. The propriety of this arrangement is not at issue but it is easy to see why it led to confusion on the part of [the client] and his family, even had [Mr. Garabedian] adequately disclosed in full the *real* terms of the bargain [emphasis in original]. . . . [The client] claims — and [Mr. Garabedian] does not deny that a flat fee was originally set in the amount of $5,000. In fact, [Mr. Garabedian] received $10,000 as a fee. This enrichment is primarily the result of the apparent failure of [Mr. Garabedian] to tell [the judge and the prosecutor] in chambers that he had already received a $5,000 fee."

The hearing committee's conclusions of law were these: "[Mr. Garabedian's] failure to clearly and adequately inform [the client] of the understanding arrived at in the judge's chambers regarding the disposition of the client's $5,000, [his] failure to clearly and adequately explain why [the judge] indicated in his questions to [the client] during the change of plea hearing that [the client] would receive $5,000 of the seized funds and [Mr. Garabedian's] retention of those funds constituted violations of Canon One, Disciplinary

Rules 1-102 (A) (4) and (6) (conduct involving dishonesty and misrepresentation and conduct adversely reflecting on fitness to practice)." The appeal panel did not agree that Mr. Garabedian had violated DR 1-102 (A) (4) and (6) by retaining the $5,000.

"Although the effect upon the respondent lawyer in any discipline case is an important consideration, the primary factor is the effect upon, and perception of, the public and the bar. *Matter of Keenan*, 314 Mass. 544, 547 (1943). Thus, review by the full court, on appeal from [a] single justice's judgment [or a determination by this court in a case reserved and reported, as here] must be by a standard which promotes even-handed results in such cases." *Matter of Alter*, 389 Mass. 153, 156 (1983). Our task in this case, therefore, is to impose a level of discipline that is consistent with the discipline that has been imposed by various single justices in substantially similar cases. See *id*.

Having previously received an informal admonition for neglect and prejudice in 1983, Mr. Garabedian neglected legal matters entrusted to him on three separate occasions, commingled clients' funds with his own and on one such occasion briefly misappropriated a client's money to his own use. The ultimate harm sustained by Mr. Garabedian's clients in those matters appears to have been insubstantial. Nevertheless, the repetitiveness of the misconduct must be recognized. "[I]t is appropriate for us to consider the cumulative effect of the several violations committed by the respondent." *Matter of Palmer*, 413 Mass. 33, 38 (1992). *Matter of Saab*, 406 Mass. 315, 327 (1989) ("evidence of past misconduct, particularly where that misconduct has been persistent, has been essential in determining the appropriate level of discipline to be imposed in any case").

We need not determine what the appropriate level of discipline would be if Mr. Garabedian's misconduct were limited to the neglect of client matters, commingling, and brief misappropriation of funds set forth above. In addition to those matters, there is the matter of the client in count six involving dishonesty both in the form of misrepresentation, by

what Mr. Garabedian said to the client and what he failed to disclose to the client and the judge, and in the form of Mr. Garabedian's taking of "some money that didn't belong to [him]," as the client claimed and the hearing committee found. The board has recommended that Mr. Garabedian be suspended from the practice of law for three months. This recommendation is entitled to substantial deference. See *Matter of Alter, supra* at 157-158. We are aware of no cases involving similar facts, implicating repeated neglect and commingling, plus dishonesty, in which single justices have imposed discipline of less than a three-month period of suspension. On the contrary, we are satisfied that a three-month suspension, together with annual audits as recommended by the board, is consistent with the dispositions by single justices in other cases. See, e.g., *Matter of Wagner*, S.J.C. No. 92-14BD (April 23, 1992); *Matter of Ryan*, 7 Mass. Att'y Discipline Rep. 257, 259 (1991); *Matter of Bachorowski*, 2 Mass. Att'y Discipline Rep. 7 (1981).

As we stated early in this opinion, the appeal panel recommended that Mr. Garabedian be ordered to deposit $5,000 in the Superior Court to be disposed of pursuant to an order of that court and the board adopted that recommendation. In making that recommendation, the appeal panel rejected the hearing committee's recommendation that Mr. Garabedian be ordered to pay the $5,000 to the client in count six. We agree with the hearing committee, the appeal panel, and the board that Mr. Garabedian is not entitled to keep the $5,000. With regard to the question to whom the $5,000 should be paid, we are persuaded that the sounder recommendation was that made by the hearing committee. We are unwilling to speculate about what might have happened to the criminal and civil cases involving the client if Mr. Garabedian had told the judge that he had previously received a "one time" $5,000 fee, or if he had told the client before the plea hearing that not only would the client get no money back from the seized $14,524, but also Mr. Garabedian would get $5,000 in addition to the $5,000 the client had already paid him, or if, after the plea hearing Mr.

Garabedian had clearly stated the truth to the client instead of telling him the judge had made a mistake. One thing that is clear is that, at the plea hearing, when the "compact" between the Commonwealth and the client was made, the judge told the client that the agreement, if the client were to join it, was that the client would forfeit $9,524 of the $14,524 that had been seized, and the rest would be returned to him. The client accepted those terms. He is entitled to the benefit of them.

We refer this matter to a single justice of this court for the entry of an order (1) suspending Mr. Garabedian from the practice of law for three months from the date of the order; (2) requiring Mr. Garabedian to pay $5,000 to the client in count six forthwith; and (3) requiring that Mr. Garabedian's client accounts be audited at his expense twice yearly for three years by an accountant to be chosen by bar counsel.

*So ordered.*