### IN THE MATTER OF TAMMY SHARIF.

Suffolk. January 3, 2011. - April 27, 2011.

Present: SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.[1]

*Attorney at Law,* Disciplinary proceeding, Attorney-client relationship, Transaction with client, Suspension.

Discussion of the rules governing funds advanced by a client to an attorney for the payment of legal fees. [564-565]

This court declined to apply the presumptive sanctions of indefinite suspension or disbarment to all bar discipline matters involving intentional use of client funds advanced for the payment of services with either intent to deprive the client of funds or actual deprivation, given that the potential for confusion, misunderstanding, or ambiguity as to whether the funds belong to the client or the attorney militate against so severe a presumptive sanction. [565-570]

In a bar discipline matter, this court affirmed the sanction imposed by a single justice of a three-year term of suspension, with the third year stayed, where the sanction was not markedly disparate from other similar disciplinary cases involving the intentional misuse of funds advanced by a client for the payment of fees, taking into consideration the respondent attorney's additional violations and the mitigating factor of her depression; and where the sanction was sufficiently severe to protect the integrity of the bar and to deter future misconduct. [570-571]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 22, 2010.

The case was heard by *Ireland,* J.

*Robert I. Warner,* Assistant Bar Counsel.

*Mark I. Berson* for the respondent.

GANTS, J. This bar discipline matter comes before the court on appeal from an order of a single justice suspending the respondent attorney, Tammy Sharif, from the practice of law for three years, the third year to be stayed. Bar counsel appeals, urging that the presumptive sanctions of disbarment or indefinite

---

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

suspension which apply to disciplinary cases involving conversion of client funds under *Matter of Schoepfer*, 426 Mass. 183 (1997) (*Schoepfer*), and *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984) (known as the *Three Attorneys* case), should also apply when attorneys convert fees advanced by a client for the payment of legal services. We affirm the order of the single justice, and clarify the duration and terms of Sharif's probationary period.

1. *Background.* On October 14, 2008, bar counsel filed a petition for discipline against Sharif under S.J.C. Rule 4:01, § 8 (3), as appearing in 453 Mass. 1310 (2009), alleging, among other things, that Sharif misused fees that a client advanced for services, neglected client cases, and made numerous intentional misrepresentations to bar counsel during the investigation of her clients' complaints. The facts relevant to this appeal relate to two different clients and are taken from the hearing committee report and the Board of Bar Overseers (board) memorandum, as well as undisputed facts in the record before us.

Sharif was admitted to practice law in the Commonwealth in December, 2003. She developed a reputation as a competent and dedicated advocate for criminal and juvenile defendants.

In January, 2007, she was engaged by a client seeking to prevent a foreclosure that was scheduled to take place in about one week. Sharif and the client signed a written fee agreement that required the client to pay a $10,000 advance fee for services and that obligated Sharif to deposit these funds in a client trust account. The agreement also authorized Sharif to withdraw fees earned and costs expended from the client trust account two days after an itemized billing statement was sent to the client. Instead, Sharif took the $10,000 advance and deposited it in her operating account, a violation of both the written fee agreement and the Massachusetts Rules of Professional Conduct. Over the next few weeks, she spent the entire $10,000 on personal and business expenses unrelated to the client's case without having earned the fees advanced and without sending the required notices of withdrawal of funds.

Sharif failed to advise the client that she lacked competency and experience in this area of law, and then neglected and mishandled the client's case. She took no action to stop the January

foreclosure and failed to respond to repeated telephone calls from the client. Although Sharif ultimately filed a complaint alleging fraud on the client's behalf in Federal District Court, the complaint (1) failed to request complete relief; (2) alleged a cause of action for which the statute of limitations had run; (3) alleged a violation of a consumer protection act in an unrelated jurisdiction; (4) failed to name as a party the entity that had purchased the disputed property at the foreclosure sale; and (5) failed to plead fraud with sufficient particularity as required under the Federal Rules of Civil Procedure.

The client discharged Sharif and filed a complaint with bar counsel on April 27, 2007. Bar counsel forwarded the complaint to Sharif on May 4, 2007, and requested that she account for the $10,000 advance fee. In response, Sharif sent bar counsel a letter on June 6, 2007, that included a bill claiming more than $10,000 in earned fees. Sharif, however, had drafted the bill after she had been discharged by the client, and intentionally misrepresented both the work performed and the hours spent on the case. She also calculated her earnings at a rate of $175 per hour instead of the $155 specified in the fee agreement. The client later asked Sharif on at least two separate occasions to account for the withdrawal of the $10,000 advance fee, but Sharif failed to respond to the client's requests. After the client filed a civil suit, Sharif made restitution of the entire $10,000 from her personal funds.

Based on these facts, the hearing committee concluded that Sharif's actions violated numerous rules of professional conduct.[2] Of particular significance for this appeal, the hearing committee

---

[2]The hearing committee found that Sharif violated the following rules: Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998) (failure to provide competent representation); Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998) (failure to pursue client's lawful objectives through reasonably available means); Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998) (failure to act with reasonable diligence and promptness in representing client); Mass. R. Prof. C. 1.4 (a), 426 Mass. 1314 (1998) (failure to keep client reasonably informed and promptly comply with reasonable requests for information); Mass. R. Prof. C. 1.4 (b), 426 Mass. 1314 (1998) (failure to explain matters to client sufficiently to permit informed decision regarding representation); Mass. R. Prof. C. 1.5 (a), as amended, 432 Mass. 1301 (2000) (charging or collecting excessive fees); Mass. R. Prof. C. 1.15 (b) (1), as appearing in 440 Mass. 1338 (2003) (failure to hold client property in trust account); Mass. R. Prof. C. 1.15 (d) (1), as appearing in 440 Mass. 1338 (2003) (failure to render full accounting of client

found that the respondent had knowingly and intentionally misused the fees advanced by her client without earning them. The hearing committee, however, credited Sharif's testimony that, when she misused the advance fee, she did not intend to deprive her client of his money, and found that it was "not unlikely" that she would have spent the sixty-five hours required to earn $10,000 working on the client's case. The hearing committee concluded that the client was actually deprived of the entire advance fee at the time he discharged Sharif, because Sharif did little work of substance to help the case and what work she did was ineffective or defective, and because Sharif misrepresented the work she performed and the hours she spent.

A second client engaged Sharif in March, 2004, and May, 2006, to present claims resulting from two motor vehicle accidents. Sharif repeatedly failed to respond to the client's inquiries, failed to provide the client with a copy of the client's file when requested, and failed to file a civil complaint regarding the first accident before the limitations period expired on March 7, 2007. The client filed a complaint with bar counsel on June 26, 2007.

In her response to bar counsel's inquiry, Sharif enclosed a letter she claimed to have sent to the client on October 12, 2006, in which she advised the client that she was withdrawing from both personal injury matters and enclosed the client's file. When bar counsel questioned whether the letter was authentic, Sharif provided a sworn statement claiming that she had drafted the letter in October, 2006, but had failed to send it. The hearing committee found that Sharif had composed the letter on her computer just hours before she wrote her response to bar counsel in July, 2007, and that Sharif knew that her representations were false and deceptive. Based on these facts, the hearing

trust property); Mass. R. Prof. C. 1.15 (d) (2), as appearing in 440 Mass. 1338 (2003) (failure to provide notice of withdrawal, accounting of services rendered, and statement of balance of client's funds on withdrawal from trust account); Mass. R. Prof. C. 8.1 (a), 426 Mass. 1427 (1998) (knowingly making false statement of material fact in connection with disciplinary matter); Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Mass. R. Prof. C. 8.4 (d), 426 Mass. 1429 (1998) (engaging in conduct prejudicial to administration of justice); and Mass. R. Prof. C. 8.4 (h), 426 Mass. 1429 (1998) (engaging in conduct reflecting adversely on fitness to practice law).

committee concluded that Sharif's actions toward this client violated numerous rules of professional conduct.[3]

In determining its recommended sanction, the hearing committee considered mitigating and aggravating factors. In mitigation, the hearing committee found that Sharif had a history of depression and was diagnosed with a major depression and posttraumatic stress disorder in January 2008. The hearing committee also found that her depression deepened after the death of three persons close to her in late 2006 and early 2007. Her boy friend disappeared in a boating accident in November, 2006, and his body was found the next month. Her grandmother, to whom she had been very close, suffered a stroke in January, 2007, and later died in May, 2007. Her aunt, who had helped Sharif care for her grandmother after the stroke, died shortly after the grandmother's death. The hearing committee found that Sharif's depression did not excuse her conduct, but that it impaired her judgment and contributed to her violations.[4] As aggravation, the committee noted that Sharif had committed multiple violations involving more than one client.

The hearing committee recommended that Sharif be suspended for one year, with six months of the term suspended for a two-

---

[3]The hearing committee found that Sharif violated the following rules: Mass. R. Prof. C. 1.1 (failure to provide competent representation); Mass. R. Prof. C. 1.2 (a) (failure to pursue client's lawful objectives through reasonably available means); Mass. R. Prof. C. 1.3 (failure to act with reasonable diligence and promptness in representing client); Mass. R. Prof. C. 1.4 (a) (failure to keep client reasonably informed and to comply promptly with reasonable requests for information); Mass. R. Prof. C. 1.16 (d), 426 Mass. 1369 (1998) (failure to protect client's interests on termination of representation); Mass. R. Prof. C. 8.1 (a) (knowingly making a false statement of material fact in connection with a disciplinary matter); Mass. R. Prof. C. 8.4 (c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Mass. R. Prof. C. 8.4 (d) (engaging in conduct prejudicial to the administration of justice); and Mass. R. Prof. C. 8.4 (h) (engaging in conduct reflecting adversely on fitness to practice law).

[4]While noting that the payment of restitution to a client after a client files suit and complains to bar counsel typically is not considered in mitigation, the hearing committee gave "some minimal weight" to Sharif's restitution because it considered her initial failure to repay funds to be due to "the respondent's depression, rather than mere intransigence," and that litigation was "required" to compel Sharif into action given her state of "psychological isolation." The hearing committee also gave "some consideration" but not "substantial weight" to Sharif's reputation as "a competent, dedicated, and compassionate advocate for criminal and juvenile delinquency defendants."

year probationary period.[5] The hearing committee concluded that a term suspension was appropriate given similar suspensions for comparable misconduct of other attorneys, and because the mitigating circumstances of Sharif's depression suggested that a six-month suspension would "adequately serve[] the purposes of deterring misconduct, protecting the public, and maintaining the integrity of the bar." Bar counsel appealed, primarily on the grounds that conversion of client funds, including advance fees for services, warranted either indefinite suspension or disbarment under *Schoepfer*, *supra*, and *Three Attorneys*, *supra*.

The board adopted the hearing committee's subsidiary findings of fact and its conclusions of law that Sharif violated the rules as charged, but recommended a term suspension of three years. The board concluded that Sharif's depression did not have any "causal nexus" to her intentional misrepresentations about the work she performed and her billing rate, her fabrication of a false exculpatory document, and her false testimony under oath. The board, therefore, concluded that her intentional misrepresentations (distinct from her other misconduct) were not mitigated by her depression. The board rejected bar counsel's argument that the presumptive sanctions of *Matter of Schoepfer*, *supra*, should apply to the misuse of fees advanced by clients.

The matter came before the single justice pursuant to S.J.C. 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009), who ordered a term suspension of three years, with the third year stayed. Bar counsel appealed to the full court.

2. *Standard of review.* In reviewing a bar disciplinary sanction, we give "no special deference" to the determination of the single justice but both we and the single justice give "substantial deference" to the board's recommendation. *Matter of Doyle*, 429 Mass. 1013, 1013 (1999), quoting *Matter of Tobin*, 417 Mass. 81, 88 (1994). Where we have decided comparable cases, we endeavor "to ensure that the sanction ordered by the single justice is not markedly disparate from what has been ordered in comparable cases." *Matter of Doyle*, *supra*. See *Matter of Finn*,

---

[5]The hearing committee recommended, as conditions of probation, that Sharif continue to receive treatment for her depression, that she limit her law practice to criminal and juvenile matters, and that she be mentored by an attorney experienced in criminal and juvenile law who is satisfactory to bar counsel.

433 Mass. 418, 422-423 (2001). Where we have not decided any comparable cases, because the circumstances of the case are either unique or involve a matter of first impression, we review the single justice's decision "to determine whether it is supported by sufficient evidence, constitutes an abuse of discretion, and is free from any error of law." *Id.* at 423. See *Matter of McInerney*, 389 Mass. 528, 529-530 (1983). Because we conclude that we have decided comparable cases in Massachusetts, we apply the "markedly disparate" standard to our review of the sanction imposed by the single justice.

3. *The rules governing funds advanced by a client for the payment of legal fees.* Under the Massachusetts Rules of Professional Conduct, where a client pays an attorney a sum of money for legal fees before the legal fees have been earned, the fees advanced, often referred to as a retainer, belong to the client until earned by the attorney and must be held as trust funds in a client trust account. See Mass. R. Prof. C. 1.15 (a) (1), as appearing in 440 Mass. 1338 (2003) ("trust funds" defined as any funds belonging to client but held by lawyer in connection with representation); Mass. R. Prof. C. 1.15 (b) (1), as appearing in 440 Mass. 1338 (2003) (lawyer must hold client trust funds in trust account separate from lawyer's own property). Once an attorney has earned all or some of the fees advanced, the attorney should withdraw the earned fees, see Mass. R. Prof. C. 1.15 (b) (2) (ii), as appearing in 440 Mass. 1338 (2003), but the attorney may not do so before delivering to the client "in writing (i) an itemized bill or other accounting showing the services rendered, (ii) written notice of amount and date of the withdrawal, and (iii) a statement of the balance of the client's funds in the trust account after the withdrawal." Mass. R. Prof. C. 1.15 (d) (2), as appearing in 440 Mass. 1338 (2003).[6] Where the client disputes the bill, the attorney may not withdraw the disputed funds from the trust account until the dispute is resolved.

[6]Monies advanced by a client to pay for future expenses, such as filing costs or experts' fees, are also client trust funds but need not be deposited in a trust account. See Mass. R. Prof. C. 1.15 (b) (1) ("Trust funds shall be held in a trust account, except that advances for costs and expenses may be held in a business account"). These client trust funds may be used by an attorney to pay the expenses for which they were advanced without the prior written notice to a client required to withdraw monies advanced to pay legal fees. Contrast Mass. R. Prof. C. 1.15 (d) (2).

See Mass. R. Prof. C. 1.15 (b) (2) (ii). If the attorney has already withdrawn the amount billed and the client within a reasonable time after receiving the bill disputes the bill, the attorney must restore the disputed amount to the trust account until the dispute is resolved. *Id.*[7]

4. *Presumptive sanctions for intentional misuse of funds advanced by a client for payment of legal fees with intent to deprive the client or actual deprivation.* In Massachusetts, where an attorney intentionally uses client funds with intent to deprive the client of the funds, either permanently or temporarily, or where the client is actually deprived of the funds (no matter what the attorney intended), the presumptive discipline is disbarment or indefinite suspension. See *Schoepfer, supra* at 187-188; *Three Attorneys, supra* at 836-837. Bar counsel argues that, because monies advanced by a client for legal fees or expenses are trust funds until the fees are earned by the attorney or the costs expended, these presumptive sanctions should also apply to similar misuse of an advance for the payment of legal fees or

---

[7]While the rules governing trust funds have been frequently amended, we have long considered monies paid as an advance for legal services to be client trust funds that must be kept in a trust account until earned. See, e.g., S.J.C. Rule 3:07, Mass. R. Prof. C. 1.15, 426 Mass. 1363 (1998) ("lawyer shall hold property of clients . . . separate from the lawyer's own property"; "[c]omplete records of the receipt, maintenance, and disposition of [client funds] shall be kept by the lawyer"; "[a]ll funds held in trust by [a lawyer], other than advances for costs and expenses, shall be deposited in [a trust account]"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited [in a trust account], but the portion belonging to the [lawyer] must be withdrawn at the earliest reasonable time after [that interest] becomes fixed"); S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 419 Mass. 1303 (1995) ("[a]ll funds held in trust by a [lawyer] other than advances for costs and expenses, shall be deposited in [a trust account]"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited therein, but the portion belonging to the [lawyer] must be withdrawn at the earliest reasonable time after [that interest] becomes fixed"; lawyer must "[m]aintain complete records of the handling, maintenance and disposition of all trust funds . . . and render appropriate accounts to the client . . ."); S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 382 Mass. 795 (1981) ("[a]ll funds of clients paid to a [lawyer], other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited therein, but the portion belonging to the [lawyer] may be withdrawn when due"; lawyer must "[m]aintain complete records of the handling, maintenance and disposition of all funds . . . and render appropriate accounts to the client . . .").

expenses. In effect, bar counsel contends that the comparable cases we should consider in determining the sanction in this case are those where an attorney has been found to have intentionally misused traditional client funds, such as the funds of an estate for which the attorney is executor, see *Schoepfer, supra* at 184, funds obtained after settlement or judgment in a litigated dispute, see *Three Attorneys, supra* at 829, or the proceeds of a real estate sale, see *id.* at 832.

We agree with bar counsel that, where an attorney intentionally uses funds advanced to pay legal fees with intent to deprive the client of those funds, either permanently or temporarily, or where the client was actually deprived of those funds, regardless of the attorney's intent, the attorney's misconduct is serious and merits a severe sanction. But we do not agree that the sanctions of disbarment or indefinite suspension should presumptively apply to all such cases. Rather, our previous disciplinary decisions suggest that the appropriate sanction is disbarment, indefinite suspension, or a term suspension, depending on the facts of the case.[8] We continue to believe that these sanctions constitute the appropriate range of disciplinary action in such cases.

[8]See, e.g., *Matter of Garabedian,* 415 Mass. 77, 79-81, 84-85 (1993) (three-month suspension for temporary misuse and commingling of client retainer, neglecting multiple client claims, and dishonesty and misrepresentations to client); *Matter of Hopwood,* 24 Mass. Att'y Discipline Rep. 354, 354-359, 361-364 (2008) (one-year suspension for intentionally misusing retainer, failing to refund unearned retainer, failing to communicate with client, deceiving client, and failing to cooperate with bar counsel's investigation); *Matter of Shea,* 22 Mass. Att'y Discipline Rep. 684, 684-690 (2006) (disbarment for, among other things, multiple counts of misuse of client retainer, failing to account for funds, failing to refund unearned retainer, and failing to cooperate with bar counsel's investigation); *Matter of Barach,* 22 Mass. Att'y Discipline Rep. 36, 44-48, 55-57 (2006) (two-year suspension for failing to keep adequate records, charging excessive fees, failing to return unearned client advance fees, charging for work not performed, falsifying time records, and making intentional misrepresentations to bar counsel); *Matter of Duerr,* 21 Mass. Att'y Discipline Rep. 212, 212-219 (2005) (disbarment for neglecting client cases; conversion of client's advance fee for costs; engaging in unauthorized practice of law after administrative suspension; failing to cooperate with bar counsel's investigation; and making misrepresentations to clients, bar counsel, and court); *Matter of Albert,* 21 Mass. Att'y Discipline Rep. 2, 2-7 (2005) (indefinite suspension for commingling and intentionally converting client advance fees with intent to deprive and actual deprivation, repeatedly failing to refund unearned advance fees, failing to account for advance fees, failing to

The presumptive sanction of disbarment or indefinite suspension that we established in cases involving the intentional misuse of traditional client funds is not mandatory, but "[a]n offending lawyer has a heavy burden to demonstrate" that the sanction should not be applied, and we will not depart from the presumed sanction without providing "clear and convincing reasons for doing so." *Schoepfer, supra* at 187, 188. So potent a presumption of so severe a sanction is appropriate only with the intentional misuse of traditional client funds, where there is minimal risk that an attorney's misuse of those funds will arise from any confusion, misunderstanding, or ambiguity as to whether the

return client's file, neglecting client cases, using traditional client trust funds for personal use, failing to cooperate with bar counsel's investigation, and making intentional fabrications and misrepresentations to bar counsel); *Matter of Shyavitz*, 19 Mass. Att'y Discipline Rep. 424, 424-430 (2004) (indefinite suspension for intentionally commingling and misusing client advance fee with resulting actual deprivation to client, failing to make prompt refund of unearned advance fee, as well as multiple counts of commingling and intentionally misappropriating traditional client funds with intent to deprive and resulting deprivation); *Matter of Owens*, 19 Mass. Att'y Discipline Rep. 351, 351-353 (2003) (two-year suspension for misusing retainer, failing to segregate funds, improperly retaining client settlement proceeds, depriving client of funds, and making misrepresentations including false statements under oath); *Matter of McPhee*, 17 Mass. Att'y Discipline Rep. 417, 417-420 (2001) (disbarment for, among other things, converting traditional client funds, commingling and converting advance fees, failing to repay funds owed to clients, neglecting client claims, making misrepresentations to clients, failing to cooperate with bar counsel, and practicing law while suspended); *Matter of Shea*, 14 Mass. Att'y Discipline Rep. 708, 708, 712-713, 719-722 (1998) (three-year suspension for neglecting client matters, charging excessive fee, commingling and converting unearned advance fee, misappropriating other client funds, making false representations, and failing to cooperate with bar counsel); *Matter of Okai*, 11 Mass. Att'y Discipline Rep. 187, 187-189, 191 (1995) (one-year suspension for neglecting client claim, making misrepresentations to client, failing to cooperate with bar counsel's investigation, commingling and misusing unearned client advance fees, failing to return unearned advance fee, and being held in contempt of court in separate unrelated matters); *Matter of O'Neill*, 9 Mass. Att'y Discipline Rep. 253, 253-256 (1993) (disbarment for commingling and converting advance fee for services, failing to account for client funds, neglecting client claims, and conduct involving dishonesty; respondent also had history of disciplinary and criminal conduct); *Matter of Brown*, 9 Mass. Att'y Discipline Rep. 37, 37-42 (1993) (resignation and disbarment for making false statements under oath and to clients, repeated commingling and conversion of client funds, conversion of advance fees for expenses and advance fees for services, failing to provide clients with accounting of funds, and neglecting client's case).

funds belong to the client or the attorney. With retainers in which a client advances funds for the payment of legal fees, this risk is not substantial, but it is not minimal for three reasons, each of which was recognized by the board.

First, with a retainer in which the client advances funds to assure the attorney that she will be paid for her legal work, the entirety of the retainer is usually expected to be earned by the attorney. In contrast, the majority of traditional client funds usually will never be earned by the attorney.[9] While an advanced fee retainer belongs to the client until the attorney has earned it, an attorney reasonably may expect the retainer to belong to her after the legal work has been performed. As a result, misuse of this category of client funds may arise from errors of timing — using funds that an attorney expects to belong to her that do not yet belong to her.[10] While even an error of timing is a serious disciplinary violation and should not happen where an attorney complies with the accounting procedure set forth in rule 1.15 (d) (2), it is different in severity from the misuse of client funds that will never belong to the attorney.

Second, while there was no confusion in this case, the dual definitions of the word "retainer" raise the potential for misunderstanding and confusion. Funds advanced for the payment of legal fees are often referred to as a "retainer," see, e.g., *Matter of Garabedian*, 415 Mass. 77, 80-81 (1993), but a classic retainer is "a fee given to counsel on being consulted, in order to insure [the lawyer's] future services," whereby the attorney is "paid a reasonable compensation for being so bound." *Blair v. Columbian Fireproofing Co.*, 191 Mass. 333, 336 (1906), quoting Bouvier's Law Dictionary. While the funds in an advance fee retainer belong to the client and must be held in a trust account on a client's behalf until the fees are earned, see Mass. R. Prof. C. 1.15 (a) (1); Mass. R. Prof. C. 1.15 (b) (1) and (2) (ii),

---

[9]Even where an attorney with a contingent fee agreement obtains the proceeds of a settlement, only a percentage of the funds usually will be paid to the attorney.

[10]According to the Board of Bar Overseers, the subject of attorney's fees generates "more complaints to the Office of Bar Counsel than any other issue" and in particular the handling of funds advanced for the payment of fees "seems to engender much confusion." See D.C. Crane, New S.J.C. Accounting Rules for Client Funds 12, 13 (Mass. Cont. Legal Educ. 2004).

classic retainers are considered earned by the attorney when paid because the attorney "gives up the possibility of being employed by [other parties] in the very matter to which the retainer relates." *Blair* v. *Columbian Fireproofing Co.*, *supra*. In the absence of an agreement clarifying which type of retainer the attorney and client intend, an attorney may believe she has been paid a classic retainer while the client believes he paid an advance fee retainer. The potential for misunderstanding and confusion increases when we consider the wide variety of modern fee agreements.[11] In view of these varied alternatives, it may not always be clear whether the retainer is earned by the attorney at the time of payment, after certain goals or objectives have been achieved, or after hourly fees have been billed.[12] It also may not always be clear whether a payment made after the initial payment of the retainer is a replenishment of the retainer or a payment for prior services.

The third potential source of misunderstanding or confusion is that the Massachusetts Rules of Professional Conduct require funds advanced for the payment of fees for legal services to be held in a client trust account until earned but permit funds advanced for the payment of expenses to be held in an attorney's operating or business account, even though both are considered client trust funds. Mass. R. Prof. C. 1.15 (b) (1) ("Trust funds shall be held in a trust account, except that advances for costs and expenses may be held in a business account"). When a client advances funds to an attorney, it may not always be clear

---

[11]For example, modern fee arrangements may include but are not limited to: capped fees, with hourly rates and a maximum limit set for all charges related to a particular matter; budgeted, task-based, or fixed fees, with fixed amounts set for handling different matters; volume-based rates, with varying hourly rates based on the total amount of work billed to the client; phased billing, with negotiated fees for handling different parts of a client's matter and tracking of "overruns" and "underruns" to be settled at the end; incentive, value, or result-based billing for achieving certain objectives; cost plus billing, with an hourly at "cost" billing rate plus a predetermined amount of profit per matter or task; percentage fees, where the fee is based on the value of a transaction such as a real estate closing; and contingent fees. See Massachusetts Bar Association, Fees & Client Funds 28-31 (3d ed. 2003).

[12]While we recognize the potential for misunderstanding and confusion, we expect attorneys to draft clear and understandable fee agreements to diminish this risk. See *Matter of Kerlinsky*, 406 Mass. 67, 72-74 (1989), cert. denied, 498 U.S. 1027 (1991).

whether the funds are intended as an advance for fees or for expenses, or for both, and therefore may not be clear where the funds should be deposited.

For these reasons, we decline to apply the presumptive sanctions of indefinite suspension or disbarment from *Schoepfer*, *supra* at 187-188, and *Three Attorneys*, *supra* at 835-837, to all cases involving intentional use of funds advanced for the payment of services with either intent to deprive the client of funds or actual deprivation. While disbarment or indefinite suspension may be the appropriate sanction for such a violation depending on the circumstances of the case, we conclude that the potential for confusion, misunderstanding, or ambiguity as to whether the funds belong to the client or the attorney militate against so severe a presumptive sanction.

5. *Sanction.* Turning to the sanction for Sharif, we are mindful that the purpose of the disciplinary process "is to protect the public and maintain its confidence in the integrity of the bar." *Matter of Curry*, 450 Mass. 503, 520 (2008). See *Matter of Alter*, 389 Mass. 153, 156 (1983). "The appropriate level of discipline is that which is necessary to deter other attorneys and to protect the public." *Matter of Curry*, *supra* at 530. See *Matter of Concemi*, 422 Mass. 326, 329 (1996). "Each case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Three Attorneys*, *supra* at 837.

There is no dispute that Sharif intentionally misused her client's advance fee resulting in actual deprivation to her client at the time of discharge. She deposited the advance fee in her operating account and spent it without earning it, in violation not only of the Massachusetts Rules of Professional Conduct but also of her own written fee agreement. There is also no dispute that she neglected and mishandled multiple client matters, failed to live up to her ethical obligations in dealing with her clients, and made numerous intentional misrepresentations to bar counsel. These are serious violations warranting severe sanctions. There is also no dispute that Sharif suffered from depression and that her depression was exacerbated during the relevant time period by the death of her boy friend, grandmother, and aunt. We agree with the board that her depression does not

mitigate her intentional misrepresentations to bar counsel but was a mitigating factor in her conduct toward her clients, including her misuse of client funds.

We therefore conclude that the single justice's sanction of a three-year term of suspension, with the third year stayed, is not "markedly disparate" from other similar disciplinary cases involving the intentional misuse of funds advanced by a client for the payment of fees, taking into consideration Sharif's additional violations and the mitigating factor of her depression. See *Matter of Hopwood*, 24 Mass. Att'y Discipline Rep. 354 (2008) (one-year suspension for intentionally misusing retainer, failing to refund unearned retainer, failing to communicate with client, deceiving client, and failing to cooperate with bar counsel's investigation); *Matter of Barach*, 22 Mass. Att'y Discipline Rep. 36 (2006) (two-year suspension for failing to keep adequate records, charging excessive fees, failing to return unearned client advance fees, charging for work not performed, falsifying time records, and making intentional misrepresentations to bar counsel). See also note 8, *supra*. Because the sanction imposed by the single justice is not markedly disparate from the sanctions in comparable cases and is sufficiently severe to protect the integrity of the bar and to deter future misconduct, we affirm. See *Matter of Curry*, *supra* at 520, 530. We clarify that the third year of suspension is stayed for a two-year probationary period, with the conditions of probation recommended by the hearing committee: that Sharif continue to receive treatment for her depression, that she limit her law practice to criminal and juvenile matters, and that she be mentored by an attorney experienced in criminal and juvenile law who is satisfactory to bar counsel.

6. *Conclusion.* The order of the single justice is affirmed.

*So ordered.*