IN THE MATTER OF WILLIAM J. PUDLO.

Suffolk. January 3, 2011. - August 19, 2011.

Present: SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Attorney at Law,* Disciplinary proceeding, Attorney-client relationship, Misuse of client funds, Suspension.

Discussion of the standard of review applied by this court in determining the appropriate sanction to be imposed in an attorney disciplinary proceeding [404], and of the rules governing an attorney's obligations with respect to funds advanced by a client for the payment of attorney's fees and expenses [404-405].

This court concluded that where an attorney, among other things, negligently misused client funds advanced for the payment of legal fees and expenses, with deprivation, the appropriate sanction to be imposed was suspension from the practice of law for one year, with six months to be stayed on the condition that the attorney provide audit reports of all his trust accounts quarterly for two years. [405-408]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 29, 2010.

The case was reported by *Cowin*, J.

*Dorothy Anderson*, Assistant Bar Counsel.

*William J. Pudlo*, pro se.

CORDY, J. This attorney discipline matter comes before the court on a reservation and report from a single justice for determination by the full court. The issue to be addressed is the appropriate sanction to be imposed on an attorney who, among other things, negligently misused client funds advanced for the payment of legal fees and expenses, with deprivation.

1. *Background.* Bar counsel filed a three-count petition for discipline on August 1, 2008, against William J. Pudlo (respondent) in connection with his representation of Albert Barbuto. The first count alleged that the respondent failed to exercise the necessary competence and diligence in pursuing a legal malpractice claim, filed in 1999 (against Barbuto's divorce attorney), and failed adequately to advise Barbuto regarding the

matter. The second count alleged that while representing Barbuto, the respondent intentionally converted Barbuto's funds with deprivation; charged him a clearly excessive fee; failed to keep complete records of the receipt, maintenance, and disposition of his funds; and failed promptly to render a full accounting of the fee to Barbuto. The third count alleged that by August 1, 2008, the respondent had yet to maintain any of the IOLTA records required by the July 1, 2004, amendment to Mass. R. Prof. C. 1.15 (f) (1), as appearing in 440 Mass. 1338 (2004).

a. *Hearing committee's findings of fact.* Barbuto was represented by another lawyer in his 1995 divorce. In January, 1997, Barbuto consulted with the respondent about handling postdivorce proceedings and other matters. In January, 1997, Barbuto gave the respondent a $10,000 retainer, which the respondent deposited into his IOLTA account. In February, 1997, Barbuto gave the respondent another $2,000, which the respondent did not deposit into his IOLTA account and made no record of receiving. During the course of the representation, the respondent and Barbuto agreed to pursue a malpractice claim against Barbuto's divorce lawyer. Accordingly, Barbuto gave the respondent an additional $10,000 advance on October 23, 1997, which was deposited into the respondent's IOLTA account. In October and November, 1997, the respondent withdrew $9,950 against Barbuto's advances for personal use despite the fact that he had earned no more than $4,820 in fees for his work.

On July 29, 1998, the respondent sent Barbuto a facsimile transmission requesting $7,350 because he needed to "pay expert consulting witness costs for the attorneys we *have used* for our side of the case" (emphasis added). The respondent, however, had not yet engaged any experts. On August 8, Barbuto paid the respondent the requested $7,350. Although this money may have been used for litigation expenses, it was not spent on experts. The respondent's failure to maintain records of his receipt and disbursement of these funds left him at a loss to explain its use. In any event, he had spent it all and lost track of it by 2003.

Despite first consulting with Barbuto in 1997, the respondent did not send a demand letter pursuant to G. L. c. 93A to Barbuto's divorce lawyer until August 4, 1998. The divorce lawyer responded denying liability in September, 1998. The respondent then waited until March 31, 1999, to commence suit. The lawsuit

remained pending for more than five years with very little activity, and the court put the case on inactive status.

In October, 2003, Barbuto engaged a different lawyer to settle the malpractice claim. That lawyer requested a full accounting of all funds the respondent had received from Barbuto, and all expenses and fees he had charged. In response, in December, 2003, the respondent generated the first bill he had prepared to account for his work for Barbuto since January, 1997.[1] The bill indicated that the respondent had earned $23,380 in legal fees, that he had only received $15,000 from Barbuto, and that Barbuto owed him more than $9,000 in fees and expenses. Later in December, the respondent updated and corrected the bill to reflect an increase in earned legal fees. On this bill, the two $10,000 payments from Barbuto were accounted for, but Barbuto's $2,000 payment in February, 1997, and his $7,350 payment for expert fees in August, 1998, were not.

b. *Hearing committee's conclusions and recommended sanctions.* On September 11, 2009, after four days of hearings, the hearing committee found rule violations on all three counts.[2] Having been persuaded that the respondent's misuse of the funds

[1]The respondent testified before the hearing committee that he and Barbuto had agreed that the monies would be "accounted for" at the end of the malpractice case.

[2]Specifically, the hearing committee found that the respondent violated the following rules: Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998) (cumulative failures demonstrated an over-all failure of diligence); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981), and Mass. R. Prof. C. 8.4 (h), 426 Mass. 1429 (1998) (engaging in conduct that adversely reflects on fitness to practice law); Mass. R. Prof. C. 1.5 (a), 426 Mass. 1315 (1998) (charging excessive fees); Mass. R. Prof. C. 1.15 (b), 426 Mass. 1363 (1998) (failure to render promptly full accounting of funds received); Mass. R. Prof. C. 1.16 (d), 426 Mass. 1369 (1998) (failure to refund unearned portion of client's advance payment); Mass. R. Prof. C. 1.15 (f), as appearing in 440 Mass. 1338 (2004) (effective July 1, 2004) (failure to maintain required records of funds in IOLTA accounts).

Although the hearing committee found violations on all three counts, it did not find that the respondent violated every rule bar counsel charged him with violating. Notably, he was exonerated on: Mass. R. Prof. C. 1.1, 426 Mass. 1308 (1998) (competence); Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998) (pursue client's lawful objectives through reasonably available means); Mass. R. Prof. C. 1.4 (a) and (b), 426 Mass. 1314 (1998) (keep client informed, respond to reasonable inquiries, explain matters for client decisions); Mass. R. Prof. C. 1.5 (b), 426 Mass. 1315 (1998) (communicating basis for fee where

advanced by the client for legal fees and expenses had been negligent rather than intentional, the hearing committee recommended that the respondent be suspended for three months. The hearing committee justified the three-month suspension in part by noting that the Board of Bar Overseers (board) has declined to treat the misuse of advance funds with the same severity as the misuse of "classic" client funds, such as real estate deposits, settlement proceeds, and estate assets.[3]

Bar counsel objected to the hearing committee's three-month suspension recommendation and appealed to the board. Bar counsel argued that the negligent misuse with deprivation of client funds intended for fees and litigation expenses alone warranted a suspension of one year and one day, even without considering all of the other rule violations that the hearing committee found. Specifically, bar counsel argued that negligent misuse of a client's advance fees should be treated in the same manner as the negligent misuse of "classic" client funds.

The board issued its memorandum on March 8, 2010, adopting the hearing committee's findings of fact and conclusions of law. Citing *Matter of Hopwood*, 24 Mass. Att'y Discipline Rep. 354, 361-363 (2008), the board noted that historically the misuse of funds advanced as a retainer for the payment of legal fees and expenses has been disciplined less severely than the misuse of classic client funds, and took the position that lesser discipline is warranted "not because the misuse of retainers is any less serious, but because the potential for misunderstanding is substantially greater." However, the board recommended that the respondent be suspended for one year, with six months stayed on the condition that the respondent provide bar counsel with audit reports on all of his trust accounts on a quarterly basis for two years. The board filed an information with this court on March 29, 2010. On April 20, 2010, the single justice held a hearing at which bar counsel further objected to the recommendation of the board. The single justice reserved and reported the case to the full court.

---

lawyer has not regularly represented client); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981), and Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

[3]The hearing committee found no mitigating or aggravating factors.

2. *Standard of review.* "We review de novo the question of the appropriate level of discipline to be imposed." *Matter of Taylor*, 458 Mass. 1010, 1011 (2010), quoting *Matter of Doyle*, 429 Mass. 1013, 1013 (1999). To determine whether a sanction is appropriate, we consider whether that sanction "is markedly disparate from those ordinarily entered by the various single justices in similar cases," *Matter of Alter*, 389 Mass. 153, 156 (1983), recognizing that "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of Crossen*, 450 Mass. 533, 574 (2008), quoting *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984) (*Three Attorneys*). Although the court is "mindful that the board's recommendation is entitled to substantial deference," *Matter of Taylor*, *supra*, quoting *Matter of Doyle*, *supra*, "[i]n bar discipline cases that have been reserved and reported, we 'review the board's findings and reach our own conclusion.' " *Matter of Murray*, 455 Mass. 872, 879 (2010), quoting *Matter of Wainwright*, 448 Mass. 378, 384 (2007).

3. *Rules governing funds advanced by a client for the payment of attorney's fees and expenses.* Notably, the receipt and expenditure of the funds at issue in this case occurred prior to the 2004 amendments to the Massachusetts Rules of Professional Conduct. Those amendments brought significant clarity and specificity to an attorney's obligations with respect to the handling of client funds advanced for attorney's fees and the expenses of representation, including the requirement that the client be provided with a written itemized bill on or before the date that an attorney withdraws his fees from a client trust account. See Mass. R. Prof. C. 1.15 (b) (2) (ii) and (d) (2), as appearing in 440 Mass. 1338 (2004). Nevertheless, under the pre-2004 rules in effect at the time of the respondent's violation, the respondent was clearly obligated to keep client monies advanced for attorney's fees in a trust account separate from an attorney's business account until earned, and was obligated to maintain complete records of the receipt, maintenance, and disposition of all such funds.[4] Monies advanced for expenses and costs have also been considered client funds, but our rules

[4]See Rule 1.15 of the Massachusetts Rules of Professional Conduct, 426

have never required that they be kept in an account separate from the attorney's business account, and they may be withdrawn to pay expenses without prior written notice to the client.

4. *Sanctions*. The principal issue raised by bar counsel in this case, that the negligent misuse of client funds advanced for the payment of legal fees and expenses should be treated no differently from how we have treated the same conduct in relation to classic client funds, has largely been resolved in the recent case of *Matter of Sharif*, 459 Mass. 558 (2011). In that case, we declined to apply the presumptive sanctions applicable to all cases involving the intentional misuse of "traditional client funds" (with intent to deprive or deprivation), *id.* at 566, to cases involving the intentional misuse of "funds advanced for the payment of services" (with similar intent or deprivation), *id.* at 570. We based our reluctance to impose such severe presumptive sanctions on the "potential for confusion, misunderstanding, or ambiguity as to whether the funds belong to the client or the attorney." *Id.*[5]

Notwithstanding our reluctance to apply the same presumptive

Mass. 1363 (1998) ("lawyer shall hold property of clients . . . separate from the lawyer's own property"; "[c]omplete records of the receipt, maintenance, and disposition of [client funds] shall be kept by the lawyer"; "[a]ll funds held in trust by a [lawyer], other than advances for costs and expenses, shall be deposited in [trust accounts]"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited [in a trust account], but the portion belonging to the [lawyer] must be withdrawn at the earliest reasonable time after [that interest] becomes fixed"); S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 419 Mass. 1303 (1995) ("All funds held in trust by a [lawyer] other than advances for costs and expenses, shall be deposited in [trust accounts]"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited therein, but the portion belonging to the [lawyer] must be withdrawn at the earliest reasonable time after [that interest] becomes fixed"; lawyer must "[m]aintain complete records of the handling, maintenance and disposition of all funds . . . and render appropriate accounts to the client"); S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 382 Mass. 795 (1981) ("All funds of clients paid to a [lawyer], other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts"; "[f]unds belonging in part to a client and in part presently or potentially to the [lawyer] must be deposited therein, but the portion belonging to the [lawyer] may be withdrawn when due"; lawyer must "[m]aintain complete records of the handling, maintenance and disposition of all funds . . . and render appropriate accounts to the client").

[5]In *Matter of Sharif*, 459 Mass. 558, 558-563 (2011), the attorney's misconduct (which occurred after the 2004 amendments to the rules of professional

sanctions, we confirmed our view that the intentional misuse of client funds of both types is serious attorney misconduct meriting severe sanctions from a term suspension to disbarment. Where in that range the misuse of funds advanced for the payment of services should be sanctioned will "depend[] on the facts of the case." *Id.* at 566. The same construct is applicable in a case such as this, where the attorney's conduct with respect to the misuse of advanced funds was found to be negligent and not intentional. That the funds misused here were advanced for legal fees and expenses, rather than being held by the attorney for other purposes, militates toward a more textured comparison of the facts and circumstances of the case to other similar matters in which disciplinary sanctions have been imposed, rather than leaping right to a presumptive set of sanctions.

The aim of the disciplinary process "is to protect the public and maintain its confidence in the integrity of the bar and the fairness and impartiality of our legal system." *Matter of Curry*, 450 Mass. 503, 520-521 (2008). "The appropriate level of discipline is that which is necessary to deter other attorneys and to protect the public." *Id.* at 530. "Each case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Three Attorneys*, *supra*.

Sanctions in cases involving the misuse of retainers advanced for attorney's fees and expenses have depended on the totality of the circumstances at issue including the presence of other misconduct and, of importance, whether the misuse was found to be intentional or the product of negligence. In *Matter of Garabedian*, 415 Mass. 77, 84, 86 (1993), the respondent was suspended for three months for multiple acts of misconduct, including a "brief misappropriation" of a client's funds. In *Matter of Hopwood*, 24 Mass. Att'y Discipline Rep. 354 (2008),

conduct) involved the intentional misuse of a $10,000 advance for fees. The funds were deposited directly into the attorney's operating account and shortly thereafter spent on personal and unrelated business expenses. *Id.* at 559. After the client was unable to get an accounting of the respondent's use of the advanced fees and filed a complaint with the board, the respondent prepared and submitted to the board a bill that intentionally misrepresented the work performed. *Id.* at 560. For this, and other misconduct, a single justice imposed a three-year suspension with the third year of suspension stayed, which this court affirmed.

the respondent was suspended for one year for intentionally mis-using a retainer, failing to refund the unearned part of the retainer, and failing to cooperate with bar counsel. Similarly, in *Matter of Okai*, 11 Mass. Att'y Discipline Rep. 187 (1995), the respondent was suspended for one year for (among other things) neglect, misrepresentations, commingling, spending unearned attorney fees advanced by his client, failing to return the unearned portion of the advanced fees, and failing to cooperate with bar counsel's investigation. In imposing the sanction, the board found the most serious matter to be the respondent's contumacious behavior in his own divorce case. With respect to the misuse of advanced legal fees, the board cited *Matter of Garabedian*, *supra*, and noted that such conduct standing alone would merit private discipline. In *Matter of Morgan*, 17 Mass. Att'y Discipline Rep. 437 (2001), the respondent received a suspension of one year and one day for multiple failures to return the unearned portion of retainers, the failure to turn over client files, neglect, the failure to communicate with clients, an admission to criminal behavior (operating while under the influence of alcohol), and the failure to cooperate with bar counsel.

The respondent's conduct in the present case is marked by repeated instances of negligence in failing to observe the required formalities of proper accounting for and separating lawyer and client funds. Notably, the hearing committee found that the respondent withdrew $9,950 out of $10,000 the client had ad-vanced for legal fees despite the fact that (as reconstructed dur-ing the hearing process) it was apparent that he had earned no more than $4,820 of it, and had failed to account for an addi-tional $2,000 payment Barbuto made toward legal fees. Another troubling aspect is the respondent's handling of monies he sought and received for expenses. While the respondent intimated that he had incurred "expert consulting witness costs for the attor-neys we have used for our side of the case" and received $7,350 to cover those costs, he never incurred them, and could not fully account for his use of the funds.

After comparing the respondent's conduct to the cases noted above, and taking into consideration the period of time during which the principal violations occurred (1997-2004), we conclude that the discipline recommended by the board is not markedly

disparate, and is sufficient to protect the public and maintain confidence in the integrity of the bar. A judgment shall enter suspending the respondent from the practice of law for one year, six months of which is to be stayed on the condition that he provide audit reports of all his trust accounts quarterly for two years.

*So ordered.*