## IN THE MATTER OF EVAN MEYER SLAVITT.

Suffolk. March 8, 2007. - May 2, 2007.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & CORDY, JJ.

*Attorney at Law,* Disciplinary proceeding, Deceit, Suspension. *Board of Bar Overseers.*

This court concluded that no discipline was warranted for a statement made by an attorney in an affidavit submitted in connection with a lawsuit, where substantial evidence did not support the conclusion that the statement was false, misleading, or deceptive [30-32]; therefore, the appropriate discipline for the attorney, who conceded the impropriety of misrepresentations that he had made to the Board of Bar Examiners in a letter of recommendation for a bar applicant, was a two-month suspension, and not the one-year suspension recommended by the Board of Bar Overseers, which presupposed that the attorney was being disciplined for both the affidavit and the letter [32-33].

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on June 23, 2006.

The case was heard by *Ireland*, J.

*Thomas F. Maffei (Scott McConchie* with him) for the respondent.

*Constance V. Vecchione*, Bar Counsel.

COWIN, J. The respondent, Evan Slavitt, was suspended from the practice of law for one year by a single justice of this court on recommendation of the Board of Bar Overseers (board). The discipline was imposed because the respondent made false statements in a letter recommending an applicant to the Board of Bar Examiners (BBE) and because he submitted a false affidavit in connection with a lawsuit. The respondent has appealed from the order of the single justice. He concedes that the sending of the letter of recommendation to the BBE was improper but maintains that the affidavit was not "dishonest or fraudulent." We agreed with the respondent and ordered that he be suspended from the practice of law for two months from the date on which he commenced his suspension.

1. *Facts.* We recite the facts, which are generally undisputed. In 1994, the respondent represented one Douglas Fineberg in connection with a lawsuit in which Fineberg was alleged to have posed as a lawyer and converted to his own use the corpus of a trust. Fineberg was deposed in the case and made the following claims: that he had earned a master's degree; that he had earned a law degree from a California university; that he had been admitted to the California bar in 1979; and that he had worked as an associate at a law firm in California. Opposing counsel learned before trial that each of those assertions was false in some way, and in early 1995 the deposition was resumed so that Fineberg could correct his misstatements. On that occasion, Fineberg was represented personally by Slavitt, and explained as follows: he did not earn the master's degree because he failed to complete a required internship; he graduated from a predecessor of the named law school; he was not admitted to the California bar because, although he passed the examination, the results were "set aside" as a result of a criminal investigation of the firm where he worked during law school; and he never practiced as an associate at any California law firm. The civil action was eventually dismissed for reasons not entirely clear in the record, filed anew in another jurisdiction, and apparently settled. The record does not reflect that Slavitt had knowledge of the outcome of the suit after it was dismissed here.

In 1998, Slavitt joined a large Boston law firm as a partner. While working at the new firm, he saw Fineberg occasionally in Boston and also visited his home on one occasion. Fineberg told Slavitt that he had resolved his California bar status and was doing legal work at a Boston bank. Slavitt knew a "senior legal person" at the bank, who "confirmed" that Fineberg performed legal work for the bank. Slavitt desired to develop a client relationship with the bank and invited Fineberg to a client reception at his (Slavitt's) new law firm. At the reception, Slavitt introduced Fineberg to one of his new partners, and as a result of a miscommunication exploited by Fineberg, the partner came to believe that Fineberg had worked as a lawyer at Slavitt's previous law firm.

Perhaps sensing opportunity, Fineberg applied to join the

firm's technology consulting affiliate as a banking and technology specialist. He provided Slavitt's name to the firm as a professional reference. The firm's general partners (a group of which Slavitt was not a member at the time) engaged in a process that extended over several months, to determine whether Fineberg should be hired. At one point, one of Slavitt's partners stopped by Slavitt's office and asked for his opinion of Fineberg. Slavitt provided a positive reference. This was Slavitt's only involvement in the hiring process. No one asked him whether Fineberg was an attorney. Eventually, in 1998, the firm hired Fineberg as a director of the affiliate entity, and in addition retained him as "of counsel" with the firm.

The firm believed that Fineberg was admitted to the bar in California, and the partners assumed that he would seek admission in Massachusetts by taking the bar examination. Fineberg missed his first opportunity to sit for the examination, and then after less than one year at the firm, Fineberg sought from lawyers at the firm letters of recommendation for his application. Slavitt was among those attorneys who agreed to write a letter. On firm letterhead, in correspondence addressed to the BBE, Slavitt recommended Fineberg for admission to the Massachusetts bar, stating:

> "I would like to recommend Douglas Fineberg for admission to the bar. I have known Mr. Fineberg for some years both in a professional and personal capacity. Evan [*sic*] in the face of some adversity, I have found his conduct to be honest, honorable and professional. I am confident he will uphold the highest standards of the bar."

The cryptic reference to "adversity" was intended to refer to certain difficulties in Fineberg's family life. Fineberg failed the bar examination, and in any event was not qualified to sit for the bar because he had not graduated from an accredited law school.

In 2000, the firm discovered that Fineberg could not be admitted to the Massachusetts bar and at the same time discovered that he was not a member of the California bar. Fineberg was fired, but his significant practice at the firm remained a serious matter. Slavitt was assigned the task of managing the firm's response to the crisis.

Apparently because of his role addressing the aftermath of Fineberg's work at the firm, Slavitt was named personally as a defendant in a malpractice lawsuit arising from Fineberg's work in which no other partner at the firm was personally named.[1] Slavitt, through counsel, filed a motion to dismiss himself from the suit, in support of which he filed an affidavit. In the affidavit, Slavitt stated: "I had no involvement in [the firm's] interviewing, hiring, or supervising of Douglas Fineberg. . . . I did not learn that Douglas Fineberg was not admitted to practice law in California until after the events asserted in this litigation." The judge appeared to ignore the affidavit and denied the motion,[2] writing in the margin that "accepting as true the allegations of the complaint," the pleading stated a claim for relief. The suit eventually resulted in judgment against Fineberg, who failed to appear for a deposition.[3]

Meanwhile, Slavitt's partners became aware of the nature of his previous interactions with Fineberg, and apparently questioned why Slavitt had failed to disclose to them the details of those interactions. Slavitt had, of course, an opportunity to do so during the hiring process. Under pressure, Slavitt resigned from the partnership.

2. *Disciplinary proceedings.* Bar counsel petitioned for discipline for the respondent's making of false statements to the BBE in connection with Fineberg's bar admission application, and for the making of false statements in connection with the declaration in the affidavit that Slavitt "did not learn" that Fineberg was an imposter until after Fineberg was fired by the firm. See Mass. R. Prof. C. 3.3 (a) (1), 426 Mass. 1383 (1998); Mass. R. Prof. C. 8.1 (a), 426 Mass. 1427 (1998); Mass. R.

---

[1]The former client alleged, among other things, negligence by Slavitt in the hiring and supervision of Fineberg.

[2]Because the judge expressly declined to utilize the affidavit, the motion was not converted to a motion for summary judgment. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). A motion to dismiss "should be allowed if and only if 'it appears to a certainty that [the claiming pleader] is entitled to no relief under any state of facts which could be proved in support of the claim.' 2A Moore, Federal Practice 2245." Reporters' Notes to Mass. R. Civ. P. 12, Mass. Ann. Laws, Rules of Civil Procedure, at 182 (LexisNexis 2006).

[3]The suit was eventually dismissed as to the other defendants.

Prof. C. 8.4 (c), 426 Mass. 1429 (1998).[4]

A special hearing officer heard testimony and recommended a term of suspension of one year and one day. Slavitt conceded to the hearing officer that he should not have written the letter, although he vigorously contested the allegation concerning the affidavit. The hearing officer concluded that the statement in the affidavit was intentionally deceptive because Slavitt knew when he signed the affidavit that "Fineberg had been exposed as an imposter for the second time." The hearing officer also determined that Slavitt's testimony that he believed Fineberg had favorably resolved his bar status in California was "not credible." According to the hearing officer, Slavitt's misconduct was aggravated by his "combative" testimony at the hearing and his "unwilling[ness] to concede anything improper about the representations he made." Given Slavitt's impressive record as an attorney, the hearing officer concluded that Slavitt "should have known better."

The appeal panel reduced the suspension by one day, to a term of one year, reasoning that "[e]vidence of the [r]espondent's character and reputation persuades us that we need not impose an additional day of suspension merely to compel the [r]espondent to apply for reinstatement following his suspension." The board adopted the appeal board's report and reduced recommendation, and on August 18, 2006, the single justice imposed the one-year suspension. A motion to stay the suspension was denied and the respondent began his period of suspension on September 18. The respondent appealed to the full court claiming that the affidavit was not misleading and that the discipline was thus unduly harsh. In an unpublished order, we reduced the discipline to a two-month term suspension. We now explain our rationale.

---

[4]Rule 3.3 (a) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1383 (1998), states in pertinent part that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal . . . ." Rule 8.1 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1427 (1998), states in pertinent part that "a lawyer in connection with a bar admission application . . . shall not: (a) knowingly make a false statement of material fact." Rule 8.4 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1429 (1998), states in pertinent part that "[i]t is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ."

3. *Standard of review.* The single justice adopted the recommendation of the board. We review his decision de novo to determine whether it was correct as a matter of law. See *Matter of Tobin*, 417 Mass. 81, 86, 88, 91 (1994). See also *Matter of Doyle*, 429 Mass. 1013 (1999). In doing so, we apply to the board's findings, as did he, a substantial evidence test.

"[S]ubsidiary facts found by the [b]oard and contained in its report filed with the information shall be upheld if supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). In considering the evidence we take into account the entire record, and also whatever "fairly detracts from its weight." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966).

We review discipline imposed by a single justice to determine whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn*, 433 Mass. 418, 423 (2001). See *Matter of Tobin, supra* at 88; *Matter of Alter*, 389 Mass. 153, 156 (1983).

"Fundamentally, however, '[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances.' " *Matter of Foley*, 439 Mass. 324, 333 (2003), quoting *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). "The 'primary factor' in bar discipline is 'the effect upon, and perception of, the public and the bar.' " *Matter of Kerlinsky*, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999), quoting *Matter of Finnerty*, 418 Mass. 821, 829 (1994). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Concemi*, 422 Mass. 326, 329 (1996).

4. *Discussion.* Our first task is to determine whether the making of the statement in the affidavit was misconduct for which discipline should be imposed. We consider the plain meaning of the statement in the affidavit and then whether there was sub-

stantial evidence that the statement was false, misleading, or deceptive.

The plain meaning of an affidavit is a question of law. The respondent argues that the statement should be interpreted, in the context of the malpractice action, to mean that Slavitt "actually believed" that Fineberg was a lawyer admitted in California during the relevant time (the events underlying the litigation). Slavitt argues that the statement, so interpreted, was true. Bar counsel places a different gloss on the affidavit, claiming instead that the statement meant that Slavitt had not at any previous time come to know or been informed that Fineberg was not a lawyer. Interpreted in this manner, the statement would have been false.

The respondent's position is more persuasive. The statement in the affidavit indicated Slavitt's belief at the relevant time that Fineberg was admitted to the California bar. The word "learn" in typical usage, and in context, refers as much to the declarant's knowledge as to the information to which the declarant had been exposed. A reader would reasonably have understood that Slavitt was swearing to ignorance at the relevant time of the fact that Fineberg was an imposter, and not to the absence of reason or information for him to suspect a deception.

We turn to the truth or falsity of the statement and whether it was misleading in the circumstances. Slavitt testified that he believed that Fineberg was admitted in California. The hearing officer concluded that it was "not credible" that Slavitt could have believed that Fineberg "had somehow gotten himself" admitted to the California bar in the years since 1995. Perhaps if Slavitt had provided only the bare assertion that he took Fineberg at his word and nothing more, the hearing officer's conclusion might have been supported. However, there was more. In particular, as bar counsel concedes, a bank employee corroborated Fineberg's own statements to Slavitt that Fineberg was performing "legal work" for the bank. In addition, the law firm then retained Fineberg as "of counsel." Slavitt could reasonably have expected that both of those sophisticated employers would have verified Fineberg's credentials and satisfied themselves with direct proof that Fineberg was a lawyer admitted to practice in at least one jurisdiction. Contrary to the

hearing officer's conclusion, it is eminently believable that Slavitt also was duped by Fineberg into believing that Fineberg was admitted to the California bar. The letter of recommendation, although misguided, reinforces our conclusion that Slavitt believed that Fineberg had put behind him the earlier misconduct and been admitted in California as an attorney.

Slavitt swore that he did not "learn" of Fineberg's bar status until too late. He did not swear that the failure was judicious or sensible in hindsight. The fact that he was duped by an imposter, standing alone, in the circumstances of this case, does not warrant bar discipline. Thus, we conclude that substantial evidence did not support the finding that the statement was false, misleading, or deceptive. Therefore, there can be no discipline for the statement in the affidavit.

The sole conduct for which the respondent can be subjected to discipline is the letter of recommendation for admission to the bar that Slavitt sent to the BBE on behalf of Fineberg. The board recommended, and the single justice imposed, a one-year suspension. Such sanction presupposed that the respondent was being disciplined both for the letter to the BBE and the misleading statement in the affidavit. We have determined that the affidavit was not misleading, and no discipline can be imposed therefor. The respondent submits that the appropriate sanction for the letter to the BBE is "no more than a three-month suspension."

We agree and impose a sanction of two months for the following reasons. We acknowledge that the making of a misrepresentation to the BBE in connection with an application for admission is a serious event. In addition, Mass. R. Prof. C. 8.1 prohibits expressly the making of a false statement of material fact to the BBE in connection with the application of another. The letter indicated that the applicant was fit to be placed in a position of trust and responsibility as a member of the bar when information known to Slavitt indicated the opposite was true. Public reprimand alone would not properly underscore for the respondent and other members of the bar the importance of the integrity of the system for keeping from membership in the bar applicants who have demonstrated their unfitness. However, we have considered what term of suspension adequately reflects the

seriousness of what the respondent did in the circumstances, and we conclude that a suspension of two months is adequate and is not disparate from sanctions imposed in prior cases.

The cases cited by bar counsel in support of a longer period of suspension are inapplicable because they involve misrepresentations to the BBE made by the applicants about themselves. Cf. *Matter of Moore*, 442 Mass. 285, 289-290, 296 (2004) (two-year suspension for failure to disclose previous positions, including as lawyer, that were intertwined with criminal accusations, sanctions by bar, and lawsuit, aggravated by lack of candor to board and failure to take responsibility for misconduct). In other cases cited by bar counsel, the respondent was involved in other serious misconduct in addition to the making of a material misrepresentation on a bar application. See *Matter of Finn*, 433 Mass. 418, 420, 423-424, 426 (2001) (three-month suspension for misstatements in bar application to conceal defaulted student loan and significant unauthorized practice of law); Matter of Marshall, S.J.C. No. BD-2000-059 (Nov. 21, 2000) (attorney suspended indefinitely for filing an application for admission in another State under the name of another, falsifying documents of law school including false registrar's stamp, swearing to truth of false document before notary, eliciting documents from court under false name, and withdrawing application only after deception discovered).

The hearing officer and appeal panel considered as an aggravating factor Slavitt's failure to admit to misconduct. However, the respondent admitted to the hearing officer and to this court that the writing of the letter of recommendation was improper, and the other charged conduct has been determined not to violate the rules of professional conduct and cannot support discipline; failure to admit any impropriety with respect to that conduct obviously cannot be an aggravating factor.

5. *Conclusion.* For the foregoing reasons, the court remanded the matter to the county court for entry of an order suspending the respondent from the practice of law for two months, such period of suspension to commence on September 18, 2006.