NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12148

IN THE MATTER OF ARIEL J. STRAUSS.

Suffolk.    January 24, 2018. - April 12, 2018.

Present:  Gants, C.J., Lowy, Cypher, & Kafker, JJ.

Attorney at Law, Disciplinary proceeding, Misuse of client
    funds, Suspension.

Information filed in the Supreme Judicial Court for the
county of Suffolk on January 20, 2016.

The case was heard by Duffly, J.

Terrence D. Pricher, Assistant Bar Counsel.
Jeffrey D. Woolf for Board of Bar Overseers.
Thomas F. Maffei for the respondent.

LOWY, J.  We consider in this case the information filed by

the Board of Bar Overseers (board) that an attorney

intentionally misused a client's funds with temporary

deprivation resulting, and its recommendation as to the

appropriate level of discipline to be imposed.  A single justice

of this court suspended Ariel J. Strauss (respondent) from the

practice of law for six months, and the board and bar counsel appealed.[1]  For the reasons that follow, we reverse the order of term suspension and, accepting the board's recommendation, order an indefinite suspension.[2]

Background.  On August 25, 2014, bar counsel filed a two-count petition for discipline against the respondent.  Count one alleged that between June 1, 2012, and September 30, 2013, the respondent failed to properly maintain a check register for his client trust account, and failed to perform a reconciliation of the account periodically.  The respondent did not dispute the underlying facts as to count one, and a hearing committee of the board (committee) agreed that the conduct violated Mass. R. Prof. C. 1.15 (f) (1) (B) and (E), as appearing in 440 Mass. 1338 (2004).

The second count involved the respondent's conduct in connection with the settlement of a client's personal injury claim.  The committee found that the respondent (1) failed to safeguard the client's funds in a trust account, in violation of

---

[1] This bar discipline appeal is subject to S.J.C. Rule 2:23 (b), 471 Mass. 1303 (2015).  After review of the preliminary memoranda and record appendix filed pursuant to the rule, we directed the appeal to proceed in the regular course.

[2] We deny the motion to dismiss the appeal that was filed by Ariel J. Strauss (respondent).  We allow his motion to supplement the record appendix to include additional materials before the single justice.

Mass. R. Prof. C. 1.15 (b) (1), as appearing in 440 Mass. 1338 (2004); (2) failed to pay the client the proceeds of her settlement promptly, in violation of Mass. R. Prof. C. 1.15 (c), as appearing in 440 Mass. 1338 (2004); (3) failed to provide the client with notice of withdrawal of his fee, the amount of the fee, an itemized bill for services rendered, and a balance of the client's funds left in the account, in violation of Mass. R. Prof. C. 1.15 (d), as appearing in 440 Mass. 1338 (2004); (4) authorized distributions that caused a negative balance in his client trust account, in violation of Mass. R. Prof. C. 1.15 (f) (1) (C), as appearing in 440 Mass. 1338 (2004); and (5) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Mass. R. Prof. C. 8.4 (c) and (h), 426 Mass. 1429 (1998).

The committee determined that the respondent's misconduct included a "[k]nowing misuse of one client's funds for the benefit of another," and recommended the respondent be indefinitely suspended from the practice of law. The board adopted the committee's findings and recommendation, and an information and record of proceedings was filed in the county court. After a hearing, the single justice issued an order imposing a six-month suspension.

Discussion. There is no dispute that the respondent violated multiple rules of professional conduct relating to the

appropriate use and maintenance of client trust accounts. The disciplinary proceedings therefore focused on the allegation that was in dispute and carried the most substantial sanction: whether the respondent intentionally misused client funds, with temporary deprivation resulting. Our review of the factual findings concerning this allegation is limited. We uphold the subsidiary facts found by the committee and adopted by the board "if supported by substantial evidence, upon consideration of the record, or such portions as may be cited by the parties." S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009). "While we review the entire record and consider whatever detracts from the weight of the board's conclusion, as long as there is substantial evidence, we do not disturb the board's finding, even if we would have come to a different conclusion if considering the matter do novo." Matter of Segal, 430 Mass. 359, 364 (1999). See id., quoting G. L. c. 30A, § 1 ("'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion'"). See Matter of Slavitt, 449 Mass. 25, 30 (2007). We give no special deference to the determination of the single justice. See Matter of Tobin, 417 Mass. 81, 88 (1994). See also Matter of Karahalis, 429 Mass. 121, 123 (1999).

1. Facts as found by the committee and adopted by the board. According to the committee's findings, the respondent

represented a client on a contingency fee basis in connection with a personal injury claim. With the client's authorization, the respondent settled the claim for $5,000, and the client signed a release in early December, 2012. At the time, the client asked the respondent for her share of the settlement in cash because she would be traveling internationally, and believed cashing a check would be difficult at her destination. The respondent agreed. It was not until about December 20, 2012, after the client had left on her trip, that the respondent received two settlement checks from the defendant's insurer in the personal injury claim: one in the amount of $558.51, representing the amount of a claimed lien for medical expenses, payable to the lien claimant; and the other for the lien-free balance of $4,441.49. The respondent deposited the lien-free settlement check into his client trust account and, the next day, withdrew his fee of $ 1,666.67. Before the deposit, the respondent had a zero balance in that account, thus the entire balance was due to the client. The respondent failed to notify the client that he had withdrawn his fee. He also failed to provide her a statement of the amount of the withdrawal or the balance of her funds in the account, any explanatory statement, or the amount due to her.

Unrelated to the client, on December 28, 2012, the respondent deposited an additional $800 in cash into his client

trust account, raising its balance to $3,574.82. On January 13, 2013, the respondent wrote a $3,400 check on the account for the benefit of his father. According to the respondent's bank records, the balance of the account fell to $175.82 at a time when the respondent was required to hold $2,774.82, for his client. After a check drawn on the account was dishonored for insufficient funds, bar counsel was notified. See Mass. R. Prof. C. 1.15 (h), as appearing in 440 Mass. 1338 (2004).

After approximately two weeks abroad, the client returned to the United States in January, 2013. The committee found that, on her return, she "wanted as much of her money as the respondent could give her lien-free as soon as he could give it; she did not insist on payment in cash and she did not authorize the respondent to hold the lien-free portion of the settlement until the lien was resolved." The committee did not credit the respondent's testimony that, after her return, the client wanted to delay receipt of the settlement funds until issues associated with the $558.51 were resolved.[3] On March 6, 2013, the

---

[3] We recognize that the single justice took a different view of the evidence. Neither the single justice nor this court, however, considers the findings of the Board of Bar Overseers (board) de novo. See Matter of Segal, 430 Mass. 359, 364 (1999). The scope of our review is limited to ascertaining whether there is substantial evidence to support the board's findings. Id. The hearing committee (committee) found, and the board accepted, that when the client returned to Massachusetts after her trip, she wanted the proceeds of her settlement. She

respondent paid the client the entire $2,774.82 due to her in cash, as well as the $558.51 medical expense lien, also in cash, and she signed a receipt.[4]

The respondent claimed that he neither misused his client's funds nor deprived her of their use.  Despite the client trust account bank records to the contrary, he asserted that when he deposited the settlement check in his trust account in December, 2012, he was holding cash in excess of that amount for the benefit of another client, his father.[5]  He testified that, after depositing the settlement check, he reserved an equivalent amount in cash in an envelope on his desk that he "earmarked" for his client based on her pre-trip request that she be paid in

---

did not insist on cash, which she previously requested because of her impending trip, and she did not authorize the respondent to retain all of the settlement funds until the medical lien was resolved.  The client testified that she did not know why she had had to wait so long for the funds, and that she was impatient.  Although the respondent testified otherwise, the committee was not required to credit his testimony.

[4] The respondent advised the client of his belief that the lien was improper.  He paid the client the amount of the lien, $558.51, from his own funds, and the receipt signed by the client indicated that the respondent was authorized to retain any of the lien amount he thereafter recovered.

[5] The respondent claimed that the funds were part of a total of $20,000 in cash that he had received from his father.  However, he deposited only $16,000 of that amount into his client trust account, and the deposits were listed differently on two separate sets of records he provided to bar counsel.  Neither of those records was consistent with bank records for the same account.

cash. He explained that he then held the funds in the trust account for his father's benefit.[6] In addition, he claimed that the client instructed him not to pay her any of the settlement proceeds, until the question whether the lien was proper had been resolved. Not only did the committee decline to credit the respondent's explanation, it also found that the respondent provided bar counsel with "reconstructed records" to conceal his misuse of the client's money for his father's benefit. There were also documents and other evidence that undermined the respondent's version.

The committee is "the sole judge of the credibility of the testimony presented at the hearing." Matter of Saab, 406 Mass. 315, 328 (1989), quoting S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1990). It may decline to credit a witness's testimony, provided it explains its reasoning and those reasons are supported by the record. See Herridge v. Board of Registration in Med., 420 Mass. 154, 164-165 (1995), S.C., 424 Mass. 201 (1997). The committee was not required to credit the

---

[6] In support of his explanation, the respondent offered records of cash receipts and disbursements from his client trust account, his father's testimony, the testimony of his client concerning her desire to be paid in cash, and the fact that she ultimately was paid in cash. The committee, however, found that the respondent fabricated certain of the records to support his claim. In one example, the committee noted that one record ostensibly created in September, 2013, included transactions from November, 2013.

respondent's assertion that he held thousands of dollars in cash for the client's benefit for several months.[7]  "[A]rguments hinging on [credibility] determinations generally fall outside the proper scope of our review," Matter of McBride, 449 Mass. 154, 161-162 (2007), and they will not be rejected unless it can "be said with certainty that [a] finding was wholly inconsistent with another implicit finding" (quotations and citation omitted), Matter of Murray, 455 Mass. 872, 880 (2010).  This is not such a case.  On the contrary, bank records established that the respondent deposited the settlement check into the trust account, and then promptly drew a check on those funds for the benefit of his father.

Even apart from the committee's credibility determinations, there is substantial evidence to support the hearing committee's findings that the respondent deposited settlement funds belonging to the client into his client trust account, and then

---

[7] The committee expressly did not credit the respondent's testimony that he held cash for the client in an envelope in his office.  We do not therefore consider whether a contrary finding would have warranted a different result.  See Matter of Murray, 455 Mass. 872, 873 (2010) (adopting rebuttable presumption of intentional misuse with permanent deprivation, where respondent received cash belonging to client, failed to deposit in client trust account, and could not account for portion of it); Matter of Gonick, 15 Mass. Att'y Discipline Rep. 230, 237, 239 (1999) (misuse of client funds occurred when funds removed from trust account and deposited into personal account).  See also Matter of Levy, Supreme Judicial Court, No. BD-2016-42, 5-6 (Aug. 26, 2016) (misuse of client funds found even though lawyer had substantial funds in other accounts at same bank).

intentionally misused them by writing a check on those funds for the benefit of his father.  The delay in paying the client her settlement funds, at least after the client returned from her trip, supports the conclusion that she was temporarily deprived of her funds.

2.  Conduct of the hearing.  Before the single justice, the respondent claimed that the committee improperly considered evidence of uncharged misconduct without according him a fair opportunity to defend against it.  After reviewing the record, we reject the claim.  Proceedings before the board and its hearing committee need not comply rigidly with the rules of evidence and procedure that are applicable in court.  See Matter of Dasent, 446 Mass. 1010, 1012 (2016).  Evidence introduced by bar counsel for the purpose of impeaching the credibility of the respondent and the respondent's witness, his father, and evidence of his father's business practices -- including his alleged reliance on cash transactions -- was relevant to the credibility of the respondent's claim that he substituted cash that he had held for his father for funds deposited in his client trust account.[8]  The committee properly could consider

---

[8] Among other things, the respondent testified that he received approximately $20,000 in cash from his father, which he deposited in increments of $4,000 or $8,000 into his client trust account.  As the committee observed, his trust account

this evidence in making credibility determinations and in concluding that the respondent's explanation was not credible.[9] See Matter of Barrett, 447 Mass. 453, 460 (2006).

The respondent also claimed that bar counsel impermissibly shifted the burden of proof to the respondent. Although bar counsel argued that the respondent and his father were not testifying truthfully, there is nothing to the respondent's claim that the assertions effectively shifted the burden to the respondent to disprove bar counsel's allegations of professional misconduct. See Matter of London, 427 Mass. 477, 482 (1998). Nor did the respondent object to bar counsel's opening statement, which directly addressed the respondent's defense. During closing argument, the respondent repeatedly pointed to bar counsel's burden of proof, and emphasized that mere disbelief of the respondent's testimony does not equate to evidence of misconduct. There was substantial and substantive

---

records did not list the cash deposits in a manner consistent with the bank records.

[9] With respect to the respondent's claim that his due process rights were violated by the committee's consideration of certain misconduct not charged in the petition for discipline, as the board's findings indicate, those matters could be "put to one side" because "[t]he committee did not mention these matters until it had announced its amply supported and articulated findings and conclusions, and after it had determined that it felt 'constrained' to apply the presumptions under [Matter of Schoepfer, 426 Mass. 183, 187 (1997)]." In any event, we have permitted uncharged misconduct to be considered in aggravation of sanction. See Matter of the Discipline of an Attorney, 448 Mass. 819, 825 n.6 (2007).

evidence to support the board's conclusions as to each element of the charged misconduct.  See Matter of Balliro, 453 Mass. 75, 84 (2009).

3.  Sanction.  Having concluded there was substantial evidence of the charged misconduct, we turn to the question of sanction.  As to that, we give deference to the board's recommendation, and review the discipline imposed by the single justice de novo, to determine whether it "is markedly disparate from judgments in comparable cases."  Matter of Slavitt, 449 Mass. at 30, quoting Matter of Finn, 433 Mass. 418, 423 (2001). See Matter of Greene, 476 Mass. 1006, 1008 (2016). "Fundamentally, however, '[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances.'"  Matter of Foley, 439 Mass. 324, 333 (2003), quoting Matter of the Discipline of an Attorney, 392 Mass. 827, 837 (1984).

Where, as here, an attorney has intentionally misused client funds with the intent to deprive the client of those funds, or where the client actually was deprived of the funds, regardless of the attorney's intent, the presumptive sanction is indefinite suspension or disbarment.  Matter of Schoepfer, 426 Mass. 183, 187 (1997).  We apply that presumption because "there is minimal risk that an attorney's misuse of those funds will arise from any confusion, misunderstanding, or ambiguity as to

whether the funds belong to the client or the attorney." Matter of Sharif, 459 Mass. 558, 567-568 (2011).

We have no difficulty concluding that the respondent intentionally misused his client's funds: the funds were properly deposited into his client trust account, and then improperly withdrawn for the benefit of another. The committee simply was not required to credit the respondent's assertion that he kept thousands of dollars in cash in an envelope for several months. Although the respondent eventually delivered the funds to the client, there is also no doubt that she was temporarily deprived of their use.

We agree with the single justice's observation that there may be circumstances where there are "clear and convincing reasons" to depart from the presumptive sanction. See Matter of Sharif, 459 Mass. at 566-567. This is not, however, such a case. The board's findings establish that the respondent intentionally -- not negligently -- misused client funds. They also establish that the client was deprived of the use of the funds for a relatively short period. But this is precisely the circumstance for which Matter of Schoepfer, 426 Mass. at 187, adopted a presumptive sanction of disbarment or indefinite suspension. Although the evidence consisted of misuse of a single client's funds, and those funds were delivered to the client within weeks or months of the settlement, attorneys are

obliged to safeguard client funds regardless of the amount. They may not treat client funds as fungible commodities, using funds belonging to one client for the benefit of another, or even for their own purposes. We view the circumstances presented as more egregious than those presented in Matter of Sharif, 459 Mass. at 571 (three-year suspension for intentional misuse of funds advanced for fees). Compare Matter of Pudlo, 460 Mass. 400, 407-408 (2011) (one-year suspension for negligent expenditure of unearned legal fees owed to client to pay his own expenses, and related improprieties in record-keeping and notification); Matter of Murray, 455 Mass. 872, 888 (2010) (six-month suspension for misuse of client funds);[10] Matter of Ryan, 24 Mass. Att'y Discipline Rep. 621, 631 (2008) (nine month suspension for misconduct including charging excessive fee and commingling and negligent misuse of client funds).

---

[10] We recognize that bar counsel and respondents have sometimes submitted stipulations concerning misconduct and disciplinary recommendations. Those stipulations have sometimes led to entry of lesser sanctions, generally in deference to the board's recommendation. See, e.g., Matter of Cedrone, 30 Mass. Att'y Discipline Rep. 55, 58 (2014) (suspension for term of one year and one day for depositing client trust funds into attorney's operating account, intentionally spending portion of funds on matters unrelated to client, misconduct in three client matters, and inadequate record-keeping). The fact that a departure was made from the presumptive sanction in the circumstances of those cases, however, does not require imposition of a lesser sanction in this case.

We also view as significant the presence of aggravating factors, and the absence of special factors in mitigation. The committee and the board weighed in aggravation that the respondent engaged in multiple violations of the rules of professional conduct, and that he used the disciplinary violations concerning record-keeping to "conceal" his misuse of client funds. See Matter of Saab, 406 Mass. at 326-327. There also was evidence on which the board could conclude that the respondent reconstructed records to hide his misuse of client funds to benefit his father. See Matter of Rickles, 30 Mass. Att'y Discipline Rep. 340, 345 (2014) (disbarment where billing records determined to have been altered to include additional time entries). Not only do we accept these factors in aggravation, but we consider as well that the respondent provided bar counsel with "falsified evidence," and displayed a lack of candor by presenting false testimony and fabricated account documents. See Matter of Hoicka, 442 Mass. 1004, 1006 (2004). Finally, we agree with the board that there were no special factors to be considered in mitigation of sanction.[11] See Matter of Alter, 389 Mass. 153, 157-158 (1983).

---

[11] Although the respondent made a reference to a broken ankle in his testimony, he neither raised the ankle as a mitigating factor in his answer to the petition for discipline, see Rules of the Board of Bar Overseers § 3.15, nor claimed that it caused his delay in paying the settlement funds to the

Conclusion. Considering all of the factors together, we conclude that the board's recommendation that the respondent be indefinitely suspended from the practice of law is consistent with the disposition in similar cases. Accordingly, we reverse the order of term suspension and remand the matter to the county court for entry of an order of indefinite suspension. The judgment of reinstatement shall be vacated as of the effective date of the order of indefinite suspension. Recognizing that the respondent already has been suspended from the practice of law for almost seven months pursuant to the order of term suspension, the order of indefinite suspension shall permit the respondent to petition for reinstatement no earlier than three months prior to four years and five months from the effective date of the order of indefinite suspension. See S.J.C. Rule 4:01, § 18 (2) (b), as appearing in 453 Mass. 1315 (2009).

So ordered.

---

client. He also failed to provide any medical records to support the claim. See Matter of Patch, 466 Mass. 1016, 1018 (2013). The board properly declined to consider the injury in mitigation of sanction. Likewise, the respondent's apparent focus on his work in a yogurt shop is not properly weighed in mitigation.