NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13388

IN THE MATTER OF JAMES HAYES.


November 10, 2023.


Attorney at Law, Disciplinary proceeding, Disbarment.  Fraud.


The respondent attorney, James Hayes, appeals from an order
of a single justice of this court disbarring him from the
practice of law.  We affirm.

1.  Background.  On June 30, 2020, bar counsel filed a
four-count petition for discipline with the Board of Bar
Overseers (board) against the respondent, alleging violations of
the rules of professional conduct then in effect.[1]  Count one
alleged that the respondent advised and assisted a client in
using improper, meritless, and fraudulent strategies to conceal
lottery winnings from the Probate and Family Court (probate
court) and the mother of the client's children,[2] including by

---

[1] In instances where the current versions of the rules of
professional conduct contain substantially the same language as
those in effect during the events at issue, we cite to the
current versions for the sake of simplicity.  See Matter of
Ablitt, 486 Mass. 1011, 1013 n.5 (2021).

[2] This was alleged to involve violations of Mass. R. Prof.
C. 1.2 (a), as appearing in 471 Mass. 1313 (2015) (failing to
accomplish lawful objectives by reasonably available means);
rule 1.2 (d) (assisting or counselling client to engage in
conduct known to be fraudulent); Mass. R. Prof. C. 3.4 (a), as
appearing in 471 Mass. 1425 (2015) (unlawfully obstructing
another party's access to evidence or unlawfully altering,
destroying, or concealing document having potential evidentiary
value); rule 3.4 (c) (knowingly disobeying obligation under
rules of tribunal); Mass. R. Prof. C. 8.4 (a), as appearing in

filing a frivolous bankruptcy petition,[3] and making knowing misrepresentations in court proceedings.[4] Count one also alleged that the respondent failed to adequately explain the matter so as to permit the client to make informed decisions about representation, failed to communicate in writing the scope of his representation and the basis of the fees to be charged,[5] and improperly required the client to waive enforcement of ethical rules in signing the fee agreement.[6]

Count two alleged that the respondent assisted his client in engaging in fraudulent conduct, unlawfully obstructed another party's access to evidence and information, and knowingly disobeyed court orders.[7]

Count three alleged that the respondent failed to maintain accounting records for three trust accounts,[8] failed to provide

---

471 Mass. 1483 (2015) (violation of rules of professional conduct); rule 8.4 (c) (dishonesty, fraud, deceit, or misrepresentation); rule 8.4 (d) (conduct prejudicial to administration of justice); and rule 8.4 (h) (fitness to practice law).

[3] This was alleged to be a violation of Mass. R. Prof. C. 3.1, as appearing in 471 Mass. 1414 (2015) (meritorious claims and contentions), and rule 8.4 (a), (c), (d), and (h).

[4] This was alleged to be a violation of Mass. R. Prof. C. 3.3 (a) (1) and (2), as appearing in 471 Mass. 1416 (2015) (candor toward tribunal); and rule 8.4 (c) and (d).

[5] This was alleged to be a violation of Mass. R. Prof. C. 1.4 (b), as appearing in 471 Mass. 1319 (2015) (communication with clients) and Mass. R. Prof. C. 1.5 (b) (1), as appearing in 463 Mass. 1302 (2012) (communication about fees).

[6] This was alleged to be a violation of rule 1.2(a), rule 1.4(b), and rule 8.4(c), (d), and (h).

[7] Count two alleges violations of rule 1.2 (d); rule 3.4 (a) and (c); and rule 8.4(a), (c), (d), and (h).

[8] This was alleged to be a violation of Mass. R. Prof. C. 1.15 (f) (1), as appearing in 471 Mass. 1380 (2015) (trust account documentation).

the client with itemized billing or notice of withdrawals,[9] made misrepresentations to the client's successor counsel that he had provided an accounting to the client and to bar counsel,[10] and failed to provide the client with his file upon request or promptly render a full accounting of trust funds upon final distribution.[11]  Additionally, count three alleged that the respondent intentionally misused client funds with intent to deprive and resulting deprivation,[12] or, in the alternative, charged and collected clearly excessive fees;[13] and that the respondent knowingly charged the client for unnecessary and meritless work for the sole purpose of extracting money.[14]

Finally, count four alleged that the respondent engaged in additional dishonest conduct by causing the client to withdraw his first bar complaint in exchange for a small refund and by drafting the withdrawal letter to bar counsel.[15]

After a five-day evidentiary hearing, at which the respondent was represented by counsel, the hearing committee issued a report finding that bar counsel had proved all of the charged violations and recommending that the respondent be disbarred.  The board voted to adopt the hearing committee's factual findings and legal conclusions, as well as its recommendation of disbarment.[16]  Two members of the board wrote a

---

[9] This was alleged to be a violation of rule 1.15 (d) (2) (accounting).

[10] This was alleged to be a violation of rule 8.4 (c).

[11] This was alleged to be a violation of rule 1.15 (d) (1) (accounting) and Mass. R. Prof. C. 1.16 (e), as appearing in 471 Mass. 1395 (2015) (terminating representation).

[12] This was alleged to be a violation of rule 1.15 (b) (segregation of trust funds) and rule 8.4 (c).

[13] This was alleged to be a violation of Mass. R. Prof. C. 1.5 (a), as amended, 480 Mass. 1315 (2018) (clearly excessive fees).

[14] This was alleged to be a violation of rule 1.5 (a) and rule 8.4 (c).

[15] Count four alleged violations of S.J.C. Rule 4:01, § 10, as appearing in 425 Mass. 1313 (1997), and rule 8.4(c) and (h).

[16] One member of the board recused herself.

separate concurring opinion to express disagreement with the majority's reasoning, but they agreed that disbarment was appropriate.[17]

The board thereafter filed an information in the county court pursuant to S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009), recommending that the respondent be disbarred. After a hearing, a single justice of this court concluded that the board's factual findings, with one minor exception, were "amply" supported by the record and agreed that the allegations of misconduct had been proved as charged. The single justice imposed the recommended sanction of disbarment, and the respondent appealed, pursuant to S.J.C. Rule 2:23 (b), 471 Mass. 1303 (2015).[18]

2. Discussion. On appeal, the respondent does not raise challenges to most of the detailed factual findings made by the hearing committee or to the violations of the rules of professional conduct stemming therefrom. See notes 2-15, supra. He instead focuses on one specific finding, which he believes undergirds the board's recommendation of disbarment, concerning whether he advised the client to engage in a fraudulent scheme.

---

[17] Specifically, the concurrence took issue with the majority's conclusion that the respondent's charging of clearly excessive fees constituted intentional misuse of client funds with deprivation.

[18] The respondent has filed a motion to supplement the record with (1) reformatted copies of the transcripts of the evidentiary hearing; and (2) additional materials outside the record below. We grant the motion insofar as it concerns the hearing transcripts, but otherwise deny the motion. The additional materials consist principally of documents that the respondent failed to offer as evidence at the hearing, as well as documents that were deemed irrelevant by the hearing committee. See Matter of Diviacchi, 491 Mass. 1003, 1007 n.8 (2022); Matter of Dragon, 440 Mass. 1023, 1024 (2003). A portion of these materials was already the subject of a pro se filing seeking to expand the record before the single justice. Like the single justice, we decline to consider them. See Matter of Gannett, 489 Mass. 1007, 1010 (2022). Moreover, we note that many of the omitted materials are "cumulative of argument and evidence" that was considered by the hearing committee, and do not "detract[] from the conclusion that a sanction less than disbarment is not warranted." See Matter of Dragon, supra.

He also takes issue with the determinations of misconduct related to his filing of a bankruptcy petition, and a petition for interlocutory relief filed in the Appeals Court.

In assessing the sufficiency of the evidence, "[t]he subsidiary findings of the hearing committee, as adopted by the board, shall be upheld if supported by substantial evidence" (quotations and citations omitted). Matter of Diviacchi, 475 Mass. 1013, 1019 (2016). Within this context, "[t]he hearing committee . . . is the sole judge of credibility, and arguments hinging on such determinations generally fall outside our proper scope of review." Id. at 1018-1019, quoting Matter of McBride, 449 Mass. 154, 161-162 (2007). After carefully reviewing the record, we agree with the single justice that the hearing committee's findings of misconduct are supported by substantial evidence.

The misconduct at issue arises from the respondent's representation of a client who won the Massachusetts lottery in August 2013. Shortly after the client received his winnings in a lump-sum payment, the client's ex-girlfriend filed a complaint in the probate court, seeking an increase in child support. The probate court subsequently entered temporary orders prohibiting the client from spending or transferring his winnings (and later, certain automobiles), and appointed a receiver to hold the funds. After the first such order issued, the client began consulting with the respondent about the probate court matter and his lottery winnings. The hearing committee found, and the board accepted, that the respondent advised him on an (improper) strategy to conceal these assets from the probate court and the client's ex-girlfriend by falsely claiming that a prior verbal agreement existed between the client and his brother to split the lottery winnings on a fifty-fifty basis.

The respondent contests this finding, intimating that such an agreement between the brothers did exist, or that, at the very least, the respondent believed as much.[19] In so doing, he challenges testimony from the client that was explicitly

_____

[19] It is worth noting the internal inconsistency of this particular argument. As described infra, the respondent disbursed a substantial portion of the lottery winnings to himself as purported legal fees for services performed on behalf of the client. If, as the respondent suggests, he genuinely believed these funds corresponded to a "share" owned by the client's brother, he intentionally misused the brother's funds to pay himself for services rendered to the client.

credited by the hearing committee. That credibility determination, however, was not inconsistent with other findings or the over-all chronology of events. See Matter of Murray, 455 Mass. 872, 880 (2010) ("The hearing committee's credibility determinations will not be rejected unless it can be said with certainty that [a] finding was wholly inconsistent with another implicit finding" [quotations and citation omitted]). The client first consulted with the respondent on or about September 3, 2013, before any assertions were made that a portion of the lottery winnings belonged to the client's brother. While the respondent argues that other portions of the client's testimony were not adopted by the hearing committee, the hearing committee was not required to take an all-or-nothing approach in assessing witness credibility. See Matter of Saab, 406 Mass. 315, 328 (1989). Accordingly, there was no error in the single justice's determination that the respondent advised the client to engage in a fraudulent scheme.

In furtherance of the goal of improperly concealing the client's lottery winnings, the respondent advised and assisted the client in pursuing a series of activities that the respondent knew to be fraudulent or in violation of court orders. These activities included setting up trust accounts for the sole purpose of secreting the lottery funds in the respondent's interest on lawyers' trust account (and periodically disbursing portions those funds to himself) in violation of orders of the probate court, making intentional misrepresentations about the client's assets in court proceedings, and obstructing and filing a frivolous bankruptcy petition of behalf of the client for the sole purpose of staying enforcement of the probate court orders. See Mass. R. Prof. C. 1.2 (d), as appearing in 471 Mass. 1313 (2015) (assisting or counselling client to engage in conduct known to be fraudulent); Mass. R. Prof. C. 3.4 (a), as appearing in 471 Mass. 1425 (2015) (unlawfully obstructing another party's access to evidence or unlawfully alter, destroy or conceal a document having potential evidentiary value); rule 3.4 (c) (knowingly disobeying obligation under rules of tribunal); Mass. R. Prof. C. 8.4 (a), as appearing in 471 Mass. 1483 (2015) (violation of rules of professional conduct); rule 8.4 (c) (dishonesty, fraud, deceit, or misrepresentation); rule 8.4 (d) (conduct prejudicial to administration of justice); and rule 8.4 (h) (fitness to practice law).

Of the many activities that the hearing committee found to be in furtherance of this scheme, the respondent takes issue with only two. Specifically, he disputes that his filing of the

bankruptcy petition was improper, asserting that the filing of such petitions is recognized as "an ordinary and appropriate means of protecting property,"[20] and similarly defends his subsequent filing of a petition for interlocutory relief in the Appeals Court relating to the probate court orders.  As an initial matter, "from a disciplinary perspective, [these arguments] are . . . largely beside the point because of the other very serious misconduct charged and found by the board." Matter of Moran, 479 Mass. 1016, 1018 (2018).  Regardless, they fail on the merits as well because, as the hearing committee found, the respondent did not have a nonfrivolous basis in law and fact for the bankruptcy petition.  See Mass. R. Prof. C. 3.1, as appearing in 471 Mass. 1414 (2015).  The bankruptcy petition was "skeletal" by the respondent's own description, and it contained numerous falsehoods about the client's financial assets.  As the hearing committee found, it was filed for the sole, improper purpose of evading the client's child support obligations and preventing the client's ex-girlfriend and a court-appointed receiver from discovering and obtaining the client's assets, in contravention of court orders.  The single justice thus did not err in concluding that the bankruptcy petition was frivolous and filed in bad faith, as part of an improper strategy to conceal the lottery winnings.  See Matter of Laroche-St. Fleur, 490 Mass. 1020, 1020 & n.4, 1022-1023 (2022) (untimely motion and subsequent appeals, which did not raise any issue that was not or could not have been raised previously, were frivolous and intended merely to delay). Indeed, according to the respondent's own testimony, even he did not believe he had an adequate legal basis for the bankruptcy petition when he filed it on October 9, 2013, and later sought interlocutory relief in the Appeals Court for that reason; that interlocutory petition was thus similarly improper because, as the single justice correctly noted, it was "[i]n furtherance of this scheme" to conceal the lottery winnings.

---

[20] Notably, this assertion is contrary to the respondent's own testimony at the hearing.  In reference to his negotiations with the receiver over the joint stipulation filed in the bankruptcy court, the respondent testified that he would not agree to the inclusion of language indicating that the client had filed the bankruptcy petition for the purpose of evading child support obligations.  He characterized this language as a "poison pill" because it would require the client to "basically . . . admit [to] bankruptcy irregularities."

In the course of representing the client, the respondent also directed the client to sign an "oppressive and predatory" fee agreement, without explaining its terms, and a durable power of attorney that gave the respondent "sole discretion" to decide what work to perform and what fees to charge, without notice to the client or authorization.  See Mass. R. Prof. C. 1.15 (d) (2), as appearing in 471 Mass. 1380 (2015) (trust account documentation).  Pursuant to this fee agreement, the respondent withdrew over $78,000 of the client's lottery winnings as purported legal fees, without providing the client notice of the withdrawals or generating appropriate billing statements, time records, or contemporaneous accountings of any kind.  See rule 1.15 (f) (1) (trust account documentation).  The billing records that were introduced in evidence at the hearing were ones that the respondent prepared in response to bar counsel's investigation.  See Matter of Zankowski, 487 Mass. 140, 147, 149 (2021) (fraudulent billing supported by substantial evidence where, inter alia, attorney testified as to purported basis for adding hours to client bills, but failed to produce any contemporaneous records or notes to support her version of events); Matter of Strauss, 479 Mass. 294, 298 (2018) (declining to credit testimony where respondent "provided bar counsel with 'reconstructed records' to conceal his misuse of the client's money").

Even taken at face value, and as the hearing committee found, those records reflect clearly excessive fees, charges for fees to which the respondent was not entitled, as well as double billing for the same legal work.  Apart from one specific instance of double billing, the respondent does not raise challenges to these findings on appeal and instead contends that imposing the sanction of disbarment is disproportionate for such misconduct.  Like the respondent's other claims, this claim lacks merit as discussed infra.

In sum, we agree with the single justice that the board's findings of misconduct are supported by substantial evidence.

3. Appropriate sanction.  On appeal, "[w]e review de novo the disciplinary sanction imposed by the single justice to determine whether it is markedly disparate from judgments in comparable cases" (quotations and citation omitted).  Matter of Williams, 491 Mass. 1021, 1026 (2023).  In considering the appropriate sanction, "the board's recommendation is entitled to substantial deference."  Matter of Tobin, 417 Mass. 81, 88 (1994).  "Our primary concern in bar discipline cases is the effect upon, and perception of, the public and the bar, . . .

and we must therefore consider, in reviewing the board's recommended sanction, what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior" (citation omitted).  Matter of Laroche-St. Fleur, 490 Mass. at 1023-1024.

The respondent contends that the sanction of disbarment is disproportionate because the findings of fraud were not supported by substantial evidence, an argument that lacks merit for the reasons discussed supra.  The respondent also argues that it was improper to conclude that his misconduct amounted to intentional misuse of client funds with deprivation resulting, so as to warrant indefinite suspension or disbarment, without precisely quantifying the amount of unearned fees collected.

As an initial matter, it is worth noting that we do not view this as an excessive fee case.  Rather, "[t]he entire engagement [between the respondent and the client] was imbued with fraud and greed."  The respondent "prey[ed] on his client's lack of education, mental health issues, and the stress induced by the [p]robate [c]ourt proceedings" to draft and have the client sign a "predatory" fee agreement and durable power of attorney.  That fee agreement gave the respondent sole discretion over what matters to pursue, how much to charge for each matter, and even how to define a "matter" for billing purposes -- all without need to inform the client.  All told, of $203,500 in client funds that the respondent held in trust, the respondent paid close to one-half of that amount to himself. For nearly all of these withdrawals, the client had no notice and thus no ability to understand or dispute the purported basis for the withdrawal.  Indeed, even the explanations that the respondent supplied to the hearing committee for the basis of his withdrawals reflect charges for fees to which the respondent was not entitled.

The "[k]nowing submission of false or fraudulent bills . . . is not equivalent to charging an excessive fee."  Matter of Zankowski, 487 Mass. at 151 (dishonest nature of respondent's intentional overbilling differentiated her misconduct from cases involving charges of excessive fees).  See Matter of Goldstone, 445 Mass. 551, 566 (2005) ("Where an attorney lacks a good faith belief that he has earned and is entitled to the monies, such conduct constitutes conversion and misappropriation of client funds").  As noted in Matter of Zankowski, supra, other cases involving intentional overbilling have resulted in terms of suspension.  See id. (listing cases of such misconduct that have resulted in one- to four-year suspensions).  In Matter of

Goldstone, supra, however, an attorney who intentionally overbilled a corporate client was disbarred because of the particularly egregious nature of his misconduct -- he not only overbilled in the amount of hundreds of thousands of dollars, but his misconduct was aggravated by threats to retain additional client funds unless he was paid and by his payment of only partial restitution, made after the initiation of disciplinary proceedings.

Here, the respondent's misconduct relating to client funds was accompanied by independently egregious misconduct -- namely, a fraudulent scheme, across multiple courts, to improperly hide the client's assets, in violation of court orders. As the board observed, this involved "advancing a blatant falsehood" that the client's brother was entitled to one-half of the lottery winnings, and "extended to filing fraudulent documents in the [p]robate [c]ourt and [b]ankruptcy [c]ourt such as [a] sham list of expenses," "intentionally misl[eading] the courts, the receiver, and [the client's ex-girlfriend]," and preventing the latter from "obtaining the true facts concerning the amount of funds available for child support." Individual acts of misconduct contained within this scheme would, standing alone, warrant a term of suspension. See, e.g., Matter of Moran, 479 Mass. at 1021 ("An intentional misrepresentation to a court typically warrants a suspension of at least one year"). When considered in its entirety, however, the cumulative effect of the respondent's fraudulent scheme warrants a more severe sanction. See Matter of Crossen, 450 Mass. 533, 581 (2008) (disbarring attorney who orchestrated elaborate and dishonest scheme to extract damaging information from former judicial law clerk in effort to discredit judge presiding over client's case); Matter of Zadworny, 26 Mass. Att'y Discipline Rep. 722 (2010) (accepting joint recommendation of indefinite suspension where attorney filed false statements in probate court, charged excessive fee, and intentionally misused funds held in trust). See generally Matter of Saab, 406 Mass. at 326-327 (consideration of cumulative effect of multiple violations is proper).

As the board observed, there are also multiple factors to be weighed in aggravation of the respondent's misconduct, and none to be weighed in mitigation. The respondent not only orchestrated a fraudulent scheme in which he intentionally misled the courts, the receiver, and the mother of his client's children, but took advantage of an unsophisticated and vulnerable client with a limited education and mental health issues. See Matter of Zak, 476 Mass. 1034, 1041 (2017) (taking

advantage of vulnerable clients serves as aggravating factor). This misconduct was further aggravated by the respondent's complete inability to recognize the wrongfulness of his conduct, see Matter of Bailey, 439 Mass. 134, 152 (2003), and cases cited, and his lack of candor before the hearing committee, see Matter of Eisenhauer, 426 Mass. 448, 455-456 (1998).[21]  In these circumstances, disbarment is appropriate.  See Matter of Zak, supra; Matter of Crossen, 450 Mass. at 581.

Judgment affirmed.


The case was submitted on the record, accompanied by a memorandum of law.

Edward R. Wiest for the respondent.

---

[21] The hearing committee found that the respondent gave testimony that was intentionally false, including, inter alia, claiming he had minimal involvement in drafting the fee agreement, claiming he withdrew trust account funds at one point because someone was trying to levy on his interest on lawyers' trust account, claiming his records were lost in a computer backup failure, and claiming the bankruptcy petition was not frivolous or intended solely to delay the probate court proceedings.