SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF MICHAEL CERULLI

 
 Docket:
 SJC-13571
 
 
 Dates:
 November 4, 2024
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Attorney at Law, Disciplinary proceeding, Public reprimand. Trial Court, Probation officers. Board of Bar Overseers.
 
 

  
      The respondent, Michael Cerulli, appeals from an order of a single justice of this court publicly reprimanding him for a violation of Mass. R. Prof. C. 8.4 (h), as appearing in 471 Mass. 1483 (2015) ("any other conduct that adversely reflects on [the lawyer's] fitness to practice law").  The proceedings arise from the respondent's conduct in the lockup area of the Chelsea Division of the District Court Department (Chelsea District Court).  We affirm.
      1.    Prior proceedings.  Bar counsel filed with the Board of Bar Overseers (board) a petition for discipline charging the respondent with violations of Mass. R. Prof. C. 3.4 (c), as appearing in 471 Mass. 1425 (2015) (knowingly disobeying obligation under rules of tribunal), 3.4 (i), as appearing in 471 Mass. 1425 (2015) (appearing before tribunal and engaging in conduct manifesting bias and prejudice based on sex or national origin), 8.1 (a), as appearing in 471 Mass. 1479 (2015) (knowingly providing false statement of material fact in connection with disciplinary matter), and 8.4 (h) (conduct reflecting adversely on fitness to practice law).  On the respondent's motion, the rule 3.4 (i) charge was dismissed.  An evidentiary hearing took place before a hearing committee.  A majority of the hearing committee determined that bar counsel had proved the remaining charges and recommended that the respondent be publicly reprimanded.[1]  The respondent appealed to the board, a majority of which disagreed with the hearing committee as to rules 3.4 (c) and 8.1 (a), agreed that the respondent violated rule 8.4 (h), and recommended that the respondent be privately admonished.[2]
      Bar counsel thereafter filed an information and record of proceedings in the county court.  A hearing, at which the respondent and bar counsel appeared, took place before the single justice.  In a thorough memorandum of decision, the single justice agreed with the majority of the board that the respondent had violated rule 8.4 (h) and that the record supported the board's conclusions that the other violations asserted by bar counsel were not proven.  However, he disagreed with the board's recommended sanction and instead imposed a public reprimand.  The respondent has appealed; bar counsel has not.
      2.    Background.  The evidence before the hearing committee consisted of the testimony of the respondent and the probation officer, a silent video recording of the incident in question, and seven other exhibits.  We summarize the hearing committee's factual findings that are material to the determination that the respondent violated rule 8.4 (h), which were supported by substantial evidence and which do not appear to be in dispute.[3]
      The respondent was admitted to the Massachusetts bar on January 21, 1985.  He is a sole practitioner with offices in Lynn, where he has a general practice including criminal cases, civil litigation, and divorce and family law matters.  About thirty percent of his practice is as a court-appointed criminal defense attorney in the Chelsea District Court, among other locations. 
      On November 7, 2019, the respondent was working in the Chelsea District Court as an assigned duty attorney.  At about 10:14 A.M., a detainee, a court officer, the respondent, and a probation officer went together into the basement lockup area.  The detainee entered the rear cell on the right.  After locking the detainee in the cell, the court officer left the area.  The front two cells, on the right and left, were already occupied by detainees.  The probation officer went to speak with the detainee in the rear cell on the right.  For some minutes, the respondent stood behind her, listening, asking at least one question, and occasionally making notes on a pad of paper.  During this time, the two detainees in the front cells appeared to be conversing with each other, and the probation officer observed the respondent "sort of bantering back and forth with the individuals in the first two cells." 
      The respondent briefly exited the lockup area.  When he returned shortly thereafter, he appeared to have a quick verbal exchange with the detainee in the front right cell.  The respondent took his cell phone out, found an image, moved to the front right cell, and showed it to the detainee for several seconds.  The respondent had his back to the probation officer and was several feet away from her, but his cell phone was visible to her.  She can be seen on the video looking at his cell phone for several seconds.
      The hearing committee found that the image, or meme, that the respondent showed to the detainee depicted a scantily clad blond woman, wearing a bustier, thong underwear, and an off-the-shoulder fur jacket, descending a flight of stairs.[4]  Its caption stated, "Immigrants are bad," and below the picture are the words, "Unless they have nice legs, screw you for money, and do naked photo shoots with other women."  The respondent showed this image to two of the detainees in the lockup area, moving around the area and continuing to talk to at least one of the detainees.  The probation officer testified that the respondent said, "That is nineteen," which she believed referred to the age of the woman in the photograph, and "that's why you need to get out of here."  For his part, the respondent admitted showing the image to the detainee.  His version of the conversation was that the detainee said, "Girls like that like guys like you in suits," and he replied, "So get out of there, get yourself a job, get yourself a suit, and maybe you can get a girl like that," and they laughed together.
      The probation officer testified that she felt very uncomfortable and did not know how to address the situation, but she wanted to say something.  As she left the area, she glared at the respondent and said, "I believe you might want to be a little more discreet next time, that was disgusting and inappropriate."[5]  The respondent, standing toward the rear of the lockup area, appeared to say something in response.  He covered his mouth with his hand and made a face, feigning shame or embarrassment.  He eventually moved to the front of the lockup area, bantering briefly with the detainees as he passed them.  As he left, he made a gesture with his left hand mimicking a form of male masturbation.  The probation officer had left the area by this time and did not see this gesture.
      Later that day, the probation officer returned to the lockup area and heard snickering between two detainees who had been present during the incident.  She stated that the detainees were laughing and asking if she was married, comments that she felt stemmed from the respondent's showing the image to them.  She acknowledged that she was used to similar comments from detainees on a daily basis, but nonetheless, she believed that these comments were related to the respondent's actions.[6]
      The probation officer told her supervisor what happened.  She did so because she "felt really uncomfortable based on what occurred" and because she "wanted for the court officers to be aware of what occurred and that that type of behavior was going on in the lock-up."  Her supervisor called the chief court officer, and the probation officer explained to him and, later, to the First Justice of the Chelsea District Court what had happened.  Court officers escorted the respondent from the court house.  After an investigation, the Committee for Public Counsel Services notified the respondent that he was "temporarily suspend[ed] . . . from any further assignments or duty days" out of the Chelsea District Court and that any of his open cases in that court would be reassigned.[7]
      Based on this conduct, a majority of the hearing committee found that the respondent violated Mass. R. Prof. C. 8.4 (h).  The hearing committee also found one factor in aggravation (the respondent's long experience as an attorney) and none in mitigation.  A majority of the board agreed as to the violation and as to mitigation and aggravation.  The single justice, after considering all the circumstances, imposed a public reprimand.
      3.    Discussion.  The case is now before us on the respondent's preliminary memorandum pursuant to S.J.C. Rule 2:23 (b), 471 Mass. 1303 (2015) (Appeals in Bar Discipline Cases).  That rule requires
"the appellant to demonstrate . . . that there has been an error of law or abuse of discretion by the single justice; that the decision is not supported by substantial evidence; that the sanction is markedly disparate from the sanctions imposed in other cases involving similar circumstances; or that for other reasons the decision will result in a substantial injustice."
      The respondent has not carried his burden under the rule. 
      First, the respondent argues that he did not receive a fair hearing before the single justice.[8]  After listening to the audio recording and reviewing the transcript, we disagree.  The single justice gave the respondent ample opportunity to be heard.  The fact that the single justice occasionally questioned the respondent's version of events does not mean that the respondent was denied a fair hearing.  Moreover, the respondent lodged no objection at the time, and when the single justice asked toward the end of the hearing if he had anything else to add, he replied that he did not.  We conclude that the respondent received a fair hearing.
      Second, the respondent challenges the sanction imposed by the single justice.  "We review de novo the disciplinary sanction imposed by the single justice to determine whether it 'is markedly disparate from judgments in comparable cases.'"  Matter of Williams, 491 Mass. 1021, 1026 (2023), quoting Matter of Slavitt, 449 Mass. 25, 30 (2007).  "Although we give 'substantial deference' to the board's recommendation, ultimately, we 'decide every case on its own merits such that every offending attorney receives the disposition most appropriate in the circumstances.'"  Matter of the Discipline of an Attorney, 489 Mass. 1018, 1023 (2022), quoting Matter of Moran, 479 Mass. 1016, 1021 (2018).  "Our primary concern in bar discipline cases is the effect upon, and perception of, the public and the bar, . . . and we must therefore consider, in reviewing the board's recommended sanction, what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior."  Matter of Hayes, 493 Mass. 1010, 1015 (2023), quoting Matter of Laroche-St. Fleur, 490 Mass. 1020, 1023-1024 (2022), cert. denied, 144 S. Ct. 130 (2023). 
      The respondent argues that a public reprimand is markedly disparate from the sanction imposed in comparable cases and that it is not supported by the evidence in this case.  We note the relative paucity of comparable cases from which the respondent's sanction might be deemed markedly disparate.  No cases decided by this court or by a single justice involving a stand-alone violation of rule 8.4 (h) have been brought to our attention.  The board has occasionally issued admonitions in cases where an attorney violated rule 8.4 (h), and no other rules, but no party appealed from those decisions to this court.  See Admonition No. 17-11, 33 Mass. Att'y Discipline Rep. 566 (2017) (attorney referred to pro se adversary's nationality in derogatory manner during mediation session); Admonition No. 99-26, 15 Mass. Att'y Discipline Rep. 699 (1999) (attorney, acting as mock trial advisor, made sexually suggestive and inappropriate remarks to middle school student).  See also Matter of Fitzgerald, 16 Mass. Att'y Discipline Rep. 164, 165-166, 172 (2000) (attorney publicly reprimanded for partially disrobing in front of juvenile client's mother along with other misconduct; disrobing alone would have warranted admonition).  Moreover, each case must be decided on its own merits. 
           The record supports the single justice's description of the misconduct in this case:  having "introduced [a] sexually suggestive image[] into a courthouse lock-up to potential clients" while in the presence of a probation officer, the respondent then "openly belittled" the officer "with a mock apology and obscene hand gesture" when she objected.  By displaying the image to the detainees and then crudely dismissing her objection in front of them, he engaged in disrespectful, demeaning conduct toward an employee of the judiciary of a kind plainly inviting disrespect toward her from the detainees as well, thereby interfering with her ability to do her job.  In these circumstances, imposing a public reprimand was not "markedly disparate" from a comparable sanction.  
      Finally, the respondent argues briefly that his right to free speech under the First Amendment to the United States Constitution was violated.  He asserts that he and the detainees were discussing the immigration policies of the Federal administration then in office and that the image, along with its caption, was a satirical comment on that issue.  The respondent is not being disciplined for expressing political views.  As set forth above, the discipline is for his demeaning and disrespectful conduct toward a probation officer in front of detainees at a court house, while he was acting in his capacity as an attorney.  The single justice did not violate his constitutional rights by imposing a public reprimand.
                                          
 
Judgment affirmed.
footnotes

      The case was submitted on the record, accompanied by a memorandum of law.
      Michael Cerulli, pro se.
          [1] A dissenting member of the committee recommended that the petition be dismissed.
               [2] One dissenting member of the board was of the view that no sanction should be imposed.  Three dissenting members were of the view that the respondent had violated all three rules and should receive a public reprimand.
               [3] The respondent does not claim that any of the hearing committee's findings was unsupported by substantial evidence or that they are insufficient to establish a violation of Mass. R. Prof. C. 8.4 (h), although he does argue that the evidence does not support the single justice's decision to increase the sanction above that recommended by the board.
          [4] The probation officer testified that the image she saw depicted a nude woman with her breasts exposed.  Although the hearing committee credited that the probation officer believed that is what she saw, it did not find that the respondent showed any such photographs. The respondent claimed that the image was a meme depicting former First Lady Melania Trump.  The hearing committee did not so find.  
               [5] The respondent testified that the probation officer said to him, "You're disgusting."  The findings do not indicate that the hearing committee credited this version of events.
               [6] The hearing committee credited that the probation officer was uncomfortable when she returned and that she believed the detainees' behavior related to the respondent's actions.  However, the hearing committee did not find that the detainees' behavior actually was related to his actions.
               [7] The respondent states that to date, he has not been permitted to represent clients in the Chelsea District Court, although he has been able to do so in other courts.  This consequence was not imposed as part of these disciplinary proceedings and is not before us.
               [8] The respondent also claims that members of the public were improperly allowed to attend the hearing, which he had expected to be private.  He made no objection at the hearing.  The claim is thus unpreserved.